08CV1141
JUDGE ZAGEL
MAG.JUDGE COX

CASE NO

MHW

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

FILED

FEB 2 5 2008 aew
2-25-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

RAUL PEREZ,

PETITIONER,

vs.

UNITED STATES OF AMERICA,

RESPONDENT.

MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. § 2255

RAUL PEREZ, PRO SE
#60397-080
FCI GREENVILLE
P.O.BOX 5000
GREENVILLE, Il 62246

PATRICK J. FITZGERALD,
Madeleine S. Murphy
UNITED STATES ATTORNEY'S OFFICE
219 SOUTH DEARBORN STREET,
SUITE 500
CHICAGO, ILLINOIS 60604

THE HONORABLE JUDGE JAMES B. ZAGEL

EVIDENTIARY HEARING REQUESTED

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Northern District of Illinois | |
|---|---|---|
| Name of Movant **Raul Perez** | Prisoner No. 60397-080 | Case No 00-CR-39 |

Place of Confinement
**FCI Greenville, P.O.Box 5000, Greenville, Illinois 62246**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | v. | **Raul Perez** (name under which convicted) |

**FILED**
2-25-2008
FEB 2 5 2008  *aew*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### MOTION

1. Name and location of court which entered the judgment of conviction under attack **U.S. District Court Northern District of Illinois, 219 S. Dearborn St.,Chicago,Il 60604**

2. Date of judgment of conviction **March 14, 2003**

3. Length of sentence **360 Months Imprisonment, 5-Years Supervised Release**

4. Nature of offense involved (all counts) **1) Conspiracy to possess with intent to Distribute marijuana in violation of 21 U.S.C. § 846; 2) Possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2**

5. What was your plea? (Check one)
   (a) Not guilty  ☒
   (b) Guilty  ☐
   (c) Nolo contendere  ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   _____ **NA** _____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☒
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☒ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

**08CV1141
JUDGE ZAGEL
MAG.JUDGE COX**

1

9. If you did appeal, answer the following:

(a) Name of court __Seventh Circuit Court of Appeals__

(b) Result __Denied__

(c) Date of result __July 28, 2004__

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☒ No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court __United States Supreme Court__

(2) Nature of proceeding __Petition For Writ of Certiorari__

_____

(3) Grounds raised __I) Whether a Blakely issue can be raised for the__

__first time on a petition for certiorari; II) Whether__

__relevant conduct, role in the offense and obstruction was__

__proven beyond a reasonable doubt as required by Blakely.__

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result __Judgment vacated and case remanded__

(6) Date of result __January 24, 2005__

(b) As to any second petition, application or motion give the same information:

(1) Name of court __U.S. District Court, Northern District of Illinois__

(2) Nature of proceeding __On Paladino remand from Seventh Circuit Court__
__of Appeals__

(3) Grounds raised. __Would District Court have imposed same sentence had__
__court known that Sentencing Guidelines were advisory__

_____

_____

2

AO 243 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result **Court stated it would have imposed same sentence.**

(6) Date of result **July 24, 2006**

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.    Yes ☒ No ☐
(2) Second petition, etc.   Yes ☒ No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

> **NOTE: Appellate Court Affirmed the judgment of the district**
>
> **court on remand, on September 19, 2006. (Ex G )**
>
> **The Supreme Court denied Certiorari on February**
>
> **26, 2007.**

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea

(b) Conviction obtained by use of coerced confession.

3

AO 242 Rev. 5/85

(d) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(e) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(c) Conviction obtained by a violation of the privilege against self-incrimination

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.

(i) Denial of effective assistance of counsel

(j) Denial of right of appeal.

    A. Ground one: **Please see attached pages** _____

    _____

    Supporting FACTS (state *briefly* without citing cases or law) _____

          **Please see attached pages** _____

    _____

    _____

    _____

    _____

    B. Ground two: **Please see attached pages** _____

    _____

    Supporting FACTS (state *briefly* without citing cases or law): _____

        **Please see attached pages** _____

    _____

    _____

    _____

    C. Ground three: **Please see attached pages** _____

    _____

    Supporting FACTS (state *briefly* without citing cases or law): _____

        **Please see attached pages** _____

    _____

4

D. Ground four: __Please see attached pages__

Supporting FACTS (state *briefly* without citing cases or law): _____

__Please see attached pages__

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them _____

__Please see attached pages__

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing _____

(b) At arraignment and plea _____

(c) At trial __Robert Aronson,__ _____

(d) At sentencing __Andrea Gambino, 200 S. Michigan Avenue, Suite 1240, Chicago,__

__Illinois 60604__

(e) On appeal **Robert Handelsman, 77 W. Washington St., Suite 1717, Chicago,**

**Illinois  60602**

(f) In any post-conviction proceeding

(g) On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future:

(b) Give date and length of the above sentence:

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

**Pro Se**
_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

**February  21 , 2008**
(date)

_____
Signature of Movant

**6**

ISSUES PRESENTED FOR REVIEW                           <u>Page</u>

I.      Whether Perez was denied the effective assistance
        of trial counsel in violation of the Federal
        Constitution's Sixth Amendment where trial
        counsel failed to challenge the authentication
        of identification of the government's alleged
        drug evidence, and further, where trial counsel
        beared witness to the authentication of the
        government's marijuana evidence, thereby lifting
        the government's burden of proof beyond a
        reasonable doubt to every element of the charged
        offense...............................................17


II.     Whether Perez was denied his Sixth Amendment jury
        trial right under the Federal Constitution where
        the district court, in violation of <u>Apprendi v New
        Jersey</u>, 530 U.S. 490, increased Perez's base offense
        level by eight (8) levels, based on facts not found
        by the jury beyond a reasonable doubt, or admitted
        by Perez.............................................23


III.    Whether Perez received ineffective assistance of
        sentencing counsel in violation of the Federal
        Constitution's Sixth Amendment counsel clause
        where Perez's sentencing counsel failed to raise
        and preserve an objection under <u>Apprendi</u> to the
        district court's eight (8) level enhancement to
        Perez's base offense level, based on judicial
        fact finding........................................27

IV.    Whether Perez was denied the effective assistance
       of appellate counsel in violation of the Federal
       Constitution's Sixth Amendment where appellate
       counsel failed to raise ineffective assistance of
       trial and sentencing counsels where these issues
       were sufficiently developed in the record to
       allow appellate review, and where appellate
       counsel, on remand from the United States
       Supreme Court, abandoned Perez's Sixth Amendment
       jury trial issue under Blakely after successfully
       arguing this issue in the Supreme Court.................33


V.     Whether Perez was denied equal protection of the
       law in violation of the Federal Constitution's
       Fifth and Fourteenth Amendments as articulated
       Griffith v Kentucky, 479 U.S. 314, where the
       district court and appellate court failed to
       apply Apprendi, 530 U.S. 490, Blakely, 542 U.S.
       296, and Booker, 375 F.3d 508, to Perez's case,
       when Apprendi was decided before Perez's trial,
       and reaffirmed in Blakely, and Booker, 375 F.3d,
       while Perez was on direct appeal.......................41


VI.    Whether Perez was denied Due Process of law in
       violation of the Federal Constitution's Fifth
       Amendment where he was subjected to remand under
       United States v Booker, 125 S.Ct. 738, and
       United States v Paladino, 401 F.3d 471, in
       violation of the ex post facto clause of Article
       I, §9, cl.3 of the Federal Constitution.................45

## STATEMENT OF FACTS:

On February 9, 2000, in the Northern District of Illinois, a federal grand jury indicted Perez, and others, on two counts of drug offenses:

Count One - Conspiracy to possess with intent to distribute marijuana. 21 U.S.C. § 846;

Count Two - Possession with intent to distribute 3,248 pounds of mixtures containing marijuana. 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Ex A )

Perez exercised his right to jury trial in April 2001. At trial, Perez was represented by attorney Robert Aronson. Both parties put on evidence at the trial.[1] The government called chemist Terry Allen Dal Cason who testified that the government's Exhibits 1A-K (marijuana) were "bricks", (Tr. P.247), and that he did analyze the bricks, (Tr. P.247). However, Mr. Dal Cason never testified that the "bricks" he analyzed contained marijuana. Instead, defense counsel, without the consent or knowledge of Perez, stipulated that the bricks contained marijuana, (Tr. P.246). Mr. Dal Cason's testimony that the marijuana was in "bricks", was conflicting with the testimony of Garza (the government's leading witness), that the marijuana was in "bales", (Tr. P.267).

---

[1] Because this motion does not raise every possible claim of error during the trial, sentencing, and direct appeal process, this motion contains pertinent facts only, to the issues raised.

9

In addition, the alleged marijuana was repeatedly
transferred to different individuals, named and unnamed,
and different agencies, (Tr. P.238,240,241,242). One of
the police officers claimed that he hired some unspecified
"firm" to help with unloading and loading the alleged
marijuana, (Tr. P.240-241). No evidence was presented
to establish that the alleged marijuana seized was in
fact the same as the vegitation (assumingly) tested, or
even that the vegitation tested was in fact marijuana.
Defense counsel had no basis, in fact or in law, to
stipulate that the vegitation analyzed be Dal Cason was
in fact marijuana. No authentication of identification
between the vegitation seized and the vegitation analyzed
by Dal Cason was ever established. Defense counsel however,
did not raise an objection, and his stipulation was
conflicting with Perez's earlier "not guilty" plea, and
jury trial right.

At the conclusion of presenting the evidence, the
court gave an <u>Apprendi</u> Jury Instruction,(Inst.#26), and
a Special Verdict Form, (Ex B ), to the jury.

After deliberations, the jury found Perez guilty
on both counts as charged in the indictment, (Ex A ).
The jury's verdict was specific in its findings and
stated:

> "We the jury find the amount of marijuana that
> defendant conspired to possess with intent to
> distribute as charged in count one of the indictment
> that has been proved beyond a reasonable doubt is
> at least 1,000 kilograms of marijuana, (Ex B ).

The indictment charged 3,248 pounds of marijuana,
or approximately 1,476 kilograms. The jury's verdict was
within this range.

On March 14, 2003, Perez appeared before the court

10

for sentencing. At sentencing, Perez was represented by
attorney Andrea E. Gambino.

At the start of the sentencing hearing the
government reminded the court:

> "If you remember from trial, judge, we had an
> Apprendi verdict form in this case wherein the
> jury found beyond a reasonable doubt that the
> defendants had distributed in excess of 1,000
> kilograms of marijuana. That gets him to a
> level 32." (Sen. Tr. P.3)

The government also informed the court, incorrectly,
that under Apprendi, the government could seek a sentence
up to 40 years, and that for sentencing purposes, the
preponderance of the evidence standard controls, (Sen.
Tr. P.3). Defense counsel raised no objection to the
government's contentions.

The government proceeded to argue that, for the
purpose of "relevant conduct", Perez's offense level
should be enhanced by four (4) levels (to a level 36)
for additional amounts of marijuana not found by the
jury beyond a reasonable doubt, or admitted by Perez,
(Sen. Tr. P.6).

The government also argued that Perez should be
enhanced two additional levels for obstruction of justice
because Perez testified at his trial, and because the jury
must have believed that Perez lied while testifying, (Sen.
Tr. P.7).

Further, the government argued that Perez should
receive an additional enhancement because he was allegedly
"the leader of an organization" of more than five people,
(Sen. Tr. P.9).

In disregard of the jury's verdict, the government
stated that it agreed with the calculations in the PSR and

11

asked the court to sentence Perez at a level 40, category 3, with a sentencing range of 360 months to life, (Sen. Tr. P.9).

Defense counsel argued that the court should discount the alleged 13,000 pounds as being "excessive", (Sen. Tr. P.13), and that Perez should be sentenced at a base offense level of 32, and not receive enhancements, either for 13,000 pounds of "relevant conduct", or for "obstruction of justice", nor for the "leadership role", (Sen. Tr. P.17).

Based on "relevant conduct" (Sen. Tr. P.18-19), "obstruction of justice" (Sen. Tr. P.19-20), and Perez's alleged role as "leader/organizer" (Sen. Tr. P.20), the court sentenced Perez to 360 months imprisonment on both counts, under a base offense level of 40, and a criminal history category of 3.

Although there was an Apprendi jury instruction given at trial, (Inst.#26), and a special verdict form on the amount of drugs, (Ex_B_), defense counsel made no objections to the court's eight (8) level enhancement based on judicial fact-finding under the prepounderance of the evidence standard.

Based on the jury's verdict alone, Perez should have been sentenced to a base offense level of 32, and a criminal history category of 3, with a sentencing range of 151 - 188 months.

On direct appeal, Perez was represented by attorney Robert Handelsman. Appellate counsel was aware that the district court gave an Apprendi jury instruction, (Inst. #26), and verdict form, (Ex_B_). Also, while Perez's direct appeal was pending, the Supreme Court heard arguments in Blakely v Washington, 542 U.S. 296 (2004). However, appellate counsel filed an Anders Brief claiming that Perez had no arguable issues for appeal. Based on appellate counsel's misrepresentations to the appellate court, the court of appeals, on June 4, 2004, issued an

12

order dismissing Perez's appeal. See (Ex C ). Perez than

filed a pro se motion for rehearing en banc. See (Ex C and
D ).

While Perez's motion for rehearing en banc was pending
in the court of appeals, the Supreme Court decided <u>Blakely v
Washington</u>, 542 U.S. 296, on June 6, 2004. Thereafter, and
based on the Supreme Court's rulings in <u>Apprendi</u> and <u>Blakely</u>,
the Seventh Circuit Court of Appeals decided <u>United States v
Booker</u>, 375 F.3d 508, on July 9, 2004, holding:

1. "The relevant statutory maximum penalty, beyond
which a defendant may not be sentenced based upon
facts other than fact of prior convictions, unless
such facts are determined by a jury beyond a
reasonable doubt, under the <u>Apprendi</u> rule, is the
maximum sentence a judge may impose solely on the
basis of the facts reflected in the jury verdict
or admitted by the defendant." <u>Id.</u>

2. "Under the <u>Blakely</u> decision, when a sentencing
judge inflicts punishment that the jury's verdict
alone does not allow, the jury has not found all
the facts which the law makes essential to the
punishment, as required by the Sixth Amendment right
to jury trial, and the judge exceeds his proper
authority." <u>Id.</u>

3. Sentencing increases based upon sentencing judge's
factual determinations pursuant to the sentencing
guidelines, that defendant convicted for possession
with intent to distribute cocaine base obstructed
justice and possessed 566 grams of cocaine base
over and above the drug quantity found by the jury,
violated defendant's Sixth Amendment right to have
a jury determine drug quantity and whether he
obstructed justice." <u>Id.</u>

13

In overlooking <u>Blakely v Washington</u>, 542 U.S. 296
(2004), <u>Apprendi v New Jersey</u>, 530 U.S. 490 (2000), and
<u>United States v Booker</u>, 375 F.3d 508 (2004), the appellate
court denied Perez's motion for rehearing en banc on July
20, 2004, (Ex_D_).

Appellate counsel informed Perez by letter that he
would not file a Petition for Writ of Certiorari on behalf
of Perez unless Perez went through the appellate court and
the court compelled counsel to do so, (Ex____). Perez did
consult with the appellate court and the court did order
appellate counsel Handelsman to prepare and file a Petition
for Writ of Certiorari to the Supreme Court on behalf of
Perez.

In appellate counsel's Petition for Writ of Certiorari,
counsel raised two issues:

> 1. Whether a <u>Blakely</u> issue can be raised for the
> first time on a Petition For Certiorari; and

> 2. Whether relevant conduct, role in the offense
> and obstruction was proven beyond a reasonable
> doubt as required by <u>Blakely</u>.

On January 24, 2005, the Supreme Court granted Perez's
petition, and vacated and remanded the judgment of the
appellate court for further proceedings in light of <u>United
States v Booker</u>, 543 U.S. 220 (2005).

Following remand, the appellate court asked the
parties, pursuant to Rule 54, to file statements regarding
what action should be taken in response to the Supreme
Court's order, (Ex_C_)

In his Rule 54 filing, appellate counsel entirely
abandoned Perez's <u>Blakely</u> issue that was raised in Perez's
Petition for Writ of Certiorari, and conceded to a limited
remand pursuant to <u>United States v Paladino</u>, 401 F.3d 471,

14

481 (7th Cir. 2005) to determine [solely] whether the
district court would have imposed a different sentence
had the court known that the Sentencing Guidelines were
advisory, (Ex_C_).

The appellate court stated:

"Having reviewed the relevant portions of the record
and applied the plain error standard of review...
we agree that this is the proper course of action.
The district court imposed Perez's sentence under a
mandatory guideline system, and there is nothing in
the record to demonstrate that the judge would have
imposed the same sentence had he known that he
possessed sentencing discretion and was not bound
by the guidelines.", (Ex_C_)

Contrary to the appellate court's contentions, the
district court, at Perez's sentencing hearing, clearly
stated that:

"I don't think there is a ground for departure within
the Guidelines in this particular case, but were
there such a ground, I would exercise my discretion
against departing downward." (Sen. Tr. P.25)

On remand, the district court reiterated its conclusions
at sentencing and merely stated that it would have imposed the
same sentence had it known that the guidelines were advisory.

In response to the district court's statement on
remand, the appellate court stated that:

"Neither party disputes the accuracy of the advisory
guideline range which was calculated at 360 months
to life...The defendant has not established plain
error or that the 360 month sentence is unreasonable
under 18 U.S.C. § 3553(A). We affirm the judgment of

15

the district court." (Ex_G_)

Petition for Writ of Certiorari was denied on February 26, 2007. The instant motion now follows.

Pursuant to 28 U.S.C. § 2255, this court has jurisdiction.

**I**

PEREZ WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL
IN VIOLATION OF THE FEDERAL CONSTITUTION'S SIXTH AMENDMENT
WHERE COUNSEL ASSISTED THE GOVERNMENT IN OBTAINING   A
CONVICTION AGAINST HIS OWN CLIENT WHEN COUNSEL STIPULATED
THAT ALLEGED VEGITATION SUPPOSINGLY ANALYZED BY A DEA
CHEMIST WAS MARIJUANA WHEN THE GOVERNMENT PRESENTED NO SUCH
EVIDENCE, AND WHERE THE GOVERNMENT ALSO PRESENTED NO EVIDENCE
OF AUTHENTICATION OF IDENTIFICATION FOR THE ALLEGED MARIJUANA
IN WHICH, WITHOUT SUCH EVIDENCE THE GOVERNMENT COULD  NOT
ESTABLISH PROOF BEYOND A REASONABLE DOUBT TO EVERY ELEMENT
OF THE CHARGED OFFENSE, AND PEREZ WOULD HAVE BEEN ACQUITED.

In Strickland v Washington, 466 U.S. 668, 80 L.Ed.2d
674, 104 S.Ct. 2052 (1984), the Supreme Court recognized
that the Sixth Amendment right to counsel exists, and is
needed, in order  to protect the fundamental right to a
fair trial.

While the Constitution grarantees a fair trial
through the Due Process Clauses, it defines the basic
elements of a fair trial largely through the several
provisions of the Sixth Amendment, including the Counsel
Clause:

> "In all criminal prosecutions, the accused shall
> enjoy the right...to have the assistance of counsel
> for his defense." Amendment VI, Federal Constitution.

In addressing a criminal defendant's right to counsel
under the Sixth Amendment, the Supreme Court held:

> "That a person who happens to be a lawyer is present
> at trial alongside the accused, however, is not
> enough to satisfy the Constitutional command. The
> Sixth Amendment recognizes the right to the
> assistance of counsel because it envisions counsel's
> playing a role that is critical to the ability of
> the adversarial system..." Id., 466 U.S. at 685.

For this reason, the United States Supreme Court has
long recognized that:

> "The right to counsel is the right to effective
> assistance of counsel." McMann v. Richardson, 397
> U.S. 759,771, n. 14, 25 L.Ed.2d 763, 90 S.Ct. 1441
> (1970).

In proceeding to articulate an analysis for determining
ineffective assistance of counsel claims, the Supreme Court
held that:

> "A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> ...has two components. First, the defendant must show
> that counsel's performance was deficient..., Second,
> the defendant must show that the deficient performance
> prejudiced the defense..." Strickland, 466 U.S. at 687.

In the instant case, although a witness testified to
the seizure of marijuana and another witness testified to
analyzing the marijuana, no evidence was presented at trial
to link the two and establish that the marijuana seized was
in fact the marijuana allegedly analyzed. In addition, no
evidence was presented to establish the accuracy of the
scales used to weigh the alleged marijuana, first at the
Joliet Police Department and,and  secondly, at the Customs

office in Chicago.

In January 2000, Don Edgerly, a police officer with the Joliet Police Department, was a part of a Cooperative Police Assistance Team [CPAT]. Edgerly testified that he put a padlock on the semi-trailer that Poteet drove to the G & G Trucking location,(Tr. P.240). Edgerly then followed as Poteet drove the truck to the District 5 Police Headquarters in Joliet. At the Police Headquarters, the marijuana was unloaded from the trailer and then loaded into the back of a smaller truck, (Tr. P.240-241). Edgerly testified that he hired an unspecified "firm" to help with unloading and loading the marijuana, but then testified that [he] loaded the marijuana from the semi-trailer into the back of a smaller truck, (Tr. P.240-241). Edgerly then drove the alleged marijuana to the Lockport Ploice Station and left the truck in a maintenance building to which he supposedly possessed the only key, (Tr. P.241). The next day, Edgerly drove the truck back to the District 5 Headquarters to count and weigh the packages. He testified to having counted 115 packages, but did not testify to the weight of each package, but only that the total was 3,221 pounds, (Tr. P.241). Edgerly did not testify about who, if anyone, helped him count and mark the packages, nor did he testify about who weighed them, how they were weighed, the reliability, type, or calibration of the scale upon which the marijuana was weighed. No evidence was introduced to corroborate his testimony or support the reliability of the calculation.

Edgerly then testified that the packages were reloaded into the small truck and that he drove the truck to the Customs Office in Chicago, (Tr. P.242). At the Customs Office unnamed parties then unloaded the the marijuana and took it upstairs to the Customs Office where someone unnamed turned it over to another unnamed person  at the Customs Office who did not testify in court, (Tr. P.242). More unnamed individuals then

19

recounted the packages, (Tr. P.242). Again an unspecified
amount of marijuana was weighed on a kilogram scale and
again no testimony was provided about the type, calibration,
reliability, or accuracy of the scale used. The total amount
was given as 1,473 kilograms, (Tr. P.242). Edgerly claimed
no further involvement with the marijuana after he had turned
it over to an unnamed Customs worker.

No Customs Official testified as to the custody of
the marijuana. Nor was it established why Customs took
custody of the marijuana that had not been shipped across
national borders. No government witness testified about how
or when the alleged marijuana was transferred into the custody
of the Drug Enforcement Administration (DEA), nor whether
the marijuana stored by Customs was the same marijuana given
to the DEA chemist (Dal Cason) for testing.

The government's next witness, Terry Allen Dal Cason,
was a chemist employed by the DEA, (Tr. P.244-245). Defense
counsel stipulated to the chemist's qualifications, (Tr. P.
245), and than stipulated that "what was tested at the
laboratory was marijuana", (Tr. P.246). Defense counsel had
no basis in fact or in law to make these stipulations.
However, after making these stipulations and lifting the
government's burden of proof, defense counsel then instructed
Perez to sign a waiver agreeing to counsel's stipulation.

After defense counsel made these stipulations against
his client, and obviously to save the chemist from commiting
a crime in perjuring himself while testifying, the government
then elicited testimony from the chemist that the government's
Exhibits 1A-K were "bricks", (Tr. P.247). This description
was contrary to earlier testimony, describing the alleged
marijuana as "bales", (Tr. P.267). The chemist did not
testify to who submitted the alleged "bricks", or when they
were submitted, (Tr. P.247).

While a missing link in the chain of custody may not
bar the admission of evidence at trial, application of the

exclusionary rule has been predicated on whether "there is sufficient proof that the evidence is what it purports to be and has not been altered in any material respect." United States v Howard-Arias, 679 F.2d 363, 366 (4th cir. 1982). Courts also have distinguished among types of evidence when determining the weight or credibility given to evidence based on missing links in the chain of custody. See United States v Humphrey, 208 F.3d 1190 (10th Cir. 2000), distinguishing documentary evidence from drugs or cash, stating that documents were "unlike fungible evidence such as drugs or cash, where absent a reliable chain of custody there would be relatively high risk that the original item had been contaminated or tampered with...".

Without defense counsel's stipulations to Dal Cason's qualifications as a chemist, and that - "what was tested at the laboratory was marijuana" (Tr. P.246), there was no proof presented by the government of either of these essential facts. Defense counsel did not personally know Dal Cason, or his qualifications as a chemist, and he certainly did not know that "what was tested at the laboratory was [in fact] marijuana". The government's evidence, and lack thereof, involving the alleged marijuana and concerning the custody of this evidence by unidentified persons who did not testify at trial and who may or may not have been law enforcement officials, was more than sufficient to raise serious questions, and doubts, concerning this evidnece.

Defense counsel's stipulations, and his failure to challenge the authentication of this evidence, only benefited the government where counsel's actions lifted the government's burden of proof to every element of the charged offenses. Had counsel challenged the authentication of the alleged marijuana evidence, and refraimed from stipulating to Dal Cason's qualifications as a DEA chemist and that "what was tested at the laboratory was marijuana", (Tr. P.246), Perez could have successfully argued that the government failed

21

to established guilt beyond a reasonable doubt, resulting in acquittal under the law. Defense counsel's actions, and lack thereof, removed the adversarial system from the trial, and deprived Perez of both, his right to the effective assistance of counsel, and to jury trial, as guaranteed him under the Fifth and Sixth Amendments of the Federal Constitution.

Where Perez would have been acquitted based on the government's failure to establish proof beyond a reasonable doubt to every element of the charged offense, Perez was clearly prejudiced by defense counsel's stipulations, and his failure to challenge the authentication of the evidence where the chain of custody had been repeatedly broken. Based on these facts, Perez has satisfied both prongs of the Strickland analysis, and he is entitled to a new trial with the effective assistance of counsel.

## II

**PEREZ WAS DENIED HIS JURY TRIAL RIGHT IN VIOLATION OF THE FEDERAL CONSTITUTION'S SIXTH AMENDMENT WHERE THE DISTRICT COURT, IN VIOLATION OF APPRENDI v NEW JERSEY, 530 U.S. 490, ENHANCED PEREZ'S BASE OFFENSE LEVEL BY EIGHT (8) LEVELS, BASED ON FACTS NOT FOUND BY THE JURY BEYOND A REASONABLE DOUBT, OR ADMITTED BY PEREZ.**

At the time of Perez's trial, the Supreme Court had already held that:

> **"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."**
> Apprendi V New Jersey, 530 U.S. 490 (2000).

The statutory maximum for Apprendi purposes is the maximum sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v Washington, 542 U.S. 296, 159 L.Ed.2d 403, 124 S.Ct. 2531, 2536 (2004).

In the instant case, the court recognized the Supreme Court's holding in Apprendi, and provided the jury with an Apprendi jury instruction (In. #26), and Verdict Form (Ex B ) on drug amount.

In the indictment, the grand jury charged an amount of drugs totaling 3,248 pounds (Ex A ). After deliberating, the jury found, beyond a reasonable doubt, that Perez was

responsible for "atleast 1,000 kilograms of marijuana"
(Ex B   ). The jury's findings were in accord with the
amount of marijuana charged in the indictment (Ex  A & B ).
The jury was not asked, nor did they find, that Perez
possessed or conspired to possess an additional amount,
that Perez obstructed justice in testifying, or that Perez
was a leader/organizer in the charged offense.

     The maximum sentence that the district court could
have imposed in this case, based on the jury's verdict
alone, was 151 months,given that Perez's base offense
level was 32, Criminal History Category 3, and Sentencing
range of 151 to 188 months.

     As far as obstructing justice and leader/organizer
role, the jury was never asked, and did not find, that
Perez had obstructed justice in testifying, or that Perez
was a leader/organizer in the charged offense. Of course,
because the court and counsel all recognized the Supreme
Court's holding in Apprendi, and provided the jury with
an Apprendi jury instruction and verdict form on drug
amount, the government could have also submitted an
Apprendi jury instruction and verdict form on obstruction
of justice and leader role in the charged offense. However,
the government did not.

     In Booker, 125 S.Ct. 738, the court's concern was
those [facts] that are often learned [after] the trial.
Id., 543 U.S. at 252. In the instant case, even the government
concedes that the facts surrounding the alleged obstruction
of justice and leader role were facts uncovered at trial,
(Sen. Tr. P.7-9). Under Apprendi, the government could have
requested that the jury find these facts beyond a reasonable
doubt but again, the government did not make such a request.

     At sentencing, the court proceeded under the
"prepounderence of the evidence" standard and enhanced
Perez's base offense level by eight (8) levels (from a
level 32 to a level 40) based on judicial fact-finding

concerning additional drug amount, obstruction of justice, and leader role, (Sen. Tr. P.17-21, 25). The court's findings took Perez from a sentencing range of 151-188 months, to a staggering 360 month to life imprisonment. The court than sentenced Perez to two concurrent 360 month sentences.

While Perez's direct appeal was pending, the Supreme Court decided Blakely v Washington, 542 U.S. 296 (2004); and the seventh Circuit Court of Appeals decided United States v Booker, 375 F.3d 508 (2004). In Blakely, the Supreme Court affirmed its holding in Apprendi that:

> "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and prove beyond a reasonable doubt." Id.

In Booker, 375 F.3d 508, the seventh circuit Court of Appeals, following Apprendi and Blakely, held that:

> "sentencing increases based upon sentencing judges factual determinations pursuant to sentencing guidelines violated defendant's Sixth Amendment right to have jury determine durg quantity and whether he obstructed justice." Id.

The decisions announced in Apprendi, 530 U.S. 490, Blakely, 542 U.S. 296, and Booker, 375 F.3d 508, was the applicable law at the time of Perez's trial, sentencing, and direct appeal. Certainly this would explain why the district court and counsel spoke of, and provided the jury with an Apprendi Jury Instruction and Verdict Form. See (In.#26), (Ex B ) and (Tr. P. 372-73, 375).

Under Apprendi, Blakely, and Booker, 375 F.3d 508,

25

the court could not increase Perez's base offense level
from a level 32 to a level 40, based on judicial fact-
finding. In doing so, the court deprived Perez of his
Sixth Amendment Jury Trial right under the Federal
Constitution. Because <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>, 375
F.3d 508, was the applicable law at the time of Perez's
trial, sentencing, and direct appeal,[t]his is the law
that applies to Perez's case. The district court should
not have enhanced Perez's base offense level based on
facts not found by the jury, or admitted by Perez.

For the above reasons, Perez is entitled to
resentencing.

26

## III

**PEREZ RECEIVED INEFFECTIVE ASSISTANCE OF SENTENCING COUNSEL IN VIOLATION OF THE FEDERAL CONSTITUTION'S SIXTH AMENDMENT COUNSEL CLAUSE, WHERE PEREZ'S SENTENCING COUNSEL FAILED TO RAISE AND PRESERVE AN OBJECTION UNDER APPRENDI, TO THE DISTRICT COURT'S EIGHT (8) LEVEL ENHANCEMENT TO PEREZ'S BASE OFFENSE LEVEL, BASED ON JUDICIAL FACT FINDING.**

In order for Perez to obtain relief on his ineffective assistance of counsel claim, Perez must meet the two-part test set forth in Strickland v Washington, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), for analyzing ineffective assistance of counsel claims:

> "A convicted defendant alleging ineffective assistance
> of counsel must show not only that counsel was not
> functioning as the counsel guaranteed by the Sixth
> Amendment so as to provide reasonable effective
> assistance but also that counsel's errors were so
> serious as to deprive the defendant of a fair
> trial because of a reasonable probability that,
> but for counsel's unprofessional errors, the result
> would have been different." Id.

On June 26, 2000, the United States Supreme Court, in Apprendi v New Jersey, 530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348, held that:

> "Other than the fact of a prior conviction, any fact

that increases the penalty for a crime beyond the
prescribed statutory maximum must be submitted to
a jury, and proved beyond a reasonable doubt."
Id., 530 U.S. at 490.

In April 2001, Perez exercised his right to a jury
trial. Perez was represented at trial by appointed counsel
(Aronson). At the close of all evidence, the district court,
in accord with Apprendi v New Jersey, Supra, 530 U.S. 490,
gave the jury an Apprendi jury instruction (In.#26), and
Verdict Form (Ex B ) in which the jury was required to
find, beyond a reasonable doubt, the drug amount for which
Perez was responsible for the charged offense.

The indictment charged that Perez conspired to
possess 3,248 pounds, or approximately 1,476 kilograms,
of marijuana, with intent to distribute (Ex A ). The
jury found beyond a reasonable doubt, and in accord with
the Apprendi Verdict Form, that Perez conspired to possess
"at least 1,000 kilograms of marijuana." (Ex B ). This
amount was well within the range of the amount charged
in the indictment.

The jury did not find, nor were they asked to find,
an amount of drugs in excess of the amount charged in the
indictment, or if Perez obstructed justice in testifying,
or if Perez was a leader or organizer in the charged
offense.

Based solely on the jury's verdict, the maximum
sentence that the district court could have imposed in
this case (without an upward departure), had the court
not made any findings concerning the quantity or drugs,
obstruction of justcie, or leader/organizer role, would
have been 151 months, given Perez's base offense level of
32, U.S.S.G. § 2D1.1(c)(4) (32 is the base offense level

28

when a defendant possessed at least 1,000 kilograms but less than 3,000 kilograms of marijuana), and the defendant's criminal history (III). "That maximum is imposed not by the words of a federal statute, but by the sentencing guideline", United States v Booker, 375 f.3d 510.

At sentencing, Perez was represented by different counsel (Andrea Gambio). The government acknowledged that, based on the jury's verdict alone, Perez's base offense level was 32 (Sen. Tr. P.3). However, the government argued that the court should make additional fact-finding on drug amount (Sen. Tr. P.5-7), obstruction of justice (Sen. Tr. P. 7-8), and leader/organizer role (Sen. Tr. P.8-9), and sentenced perez at a base offense level of 40, with a criminal history category of 3 (Sen. Tr. P.9).

Defense counsel argued that:

> "...the appropriate base offense level here is 32. He should not receive enhancement, either for 13,000 pounds of relevant conduct, or for obstruction of justice, and the leasership role, and that he should be sentenced at that level." (Sen. Tr. P.17).

After hearing the arguments of counsel, the court made factual findings concerning the drug amount (Sen. Tr. P.18), obstruction of justice (Sen. Tr. P.19-20), and leadership role (Sen. Tr. P.20), that was not found by the jury or admitted by Perez, as required by Apprendi, 530 U.S. at 490.

Based on the district court's factual findings, the court increased Perez's base offense level by eight (8) levels, and sentenced Perez  to two concurrent 360 month terms of imprisonment under an offense level of 40, a criminal history category of 3, and a sentencing range of 360 months to life imprisonment (Sen. Tr. P.25).

Although defense counsel objected to the government's determination of what Perez's base offense level should be, counsel did not preserve an objection under Apprendi v New Jersey, 530 U.S. 490, to the district court's eight (8) level enhancement based on judicial fact-finding. Granted, Ms. Gambino was not Perez's trial counsel, she was afforded ample time in which to examine the record and the PSI Report. She was given ample time in which to prepare and file a sentencing brief, and make objections to the PSI Report. Further yet, she was given ample time to argue and make objections, before the court at the sentencing hearing on March 14, 2003.

As noted above, this court gave an Apprendi jury instruction (In.#26), and verdict form (Ex B ) at trial. In accord with the Apprendi jury instruction and verdict form, the jury found Perez guilty, beyond a reasonable doubt, of a drug amount not exceeding the amount charged in the indictment (Ex A ). The record further reflects that the jury was not asked, and did not find, that Perez obstructed justice in testifying, or was a leader or organizer in the charged offense. Based on these facts contained in the record, counsel clearly had a legal basis, and a duty to her client, to make an objection under Apprendi v New Jersey, 530 U.S. 490, to the court's enhancements. In failing to do so, counsel deprived Perez of effective assistance guaranteed him under the Sixth Amendment of the Federal Constitution, thereby satisfying the first prong of the Strickland test. Id., at 687.

Further, because the court, under Apprendi v New Jersey, 530 U.S. at 490, could only sentence Perez to 151 months based solely on the jury's verdict, the result of the proceeding would have been different where the court sentenced Perez to 360 months based on an eight (8) level enhancement determined by judicial fact-finding.

In addition, because counsel failed to make an

30

Apprendi objection, she deprived Perez of pursuing his
Apprendi issue on direct appeal, thereby causing prejudice
to Perez, and satisfying the second prong of Strickland.
Id., at 687.

    While Perez was on direct appeal, the Supreme Court
decided Blakely v Washington, 542 U.S. 296, 159 L.Ed.2d
403, 124 S.Ct. 2531 (2004). In Blakely, the Supreme Court
reaffirmed its holding in Apprendi, 530 U.S. 490, that
"other than the fact of a prior conviction, any fact that
increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved
beyond a reasonable doubt." Id.

    After Blakely, and also while Perez was on direct
appeal, the Seventh Circuit Court of Appeals decided United
States v Booker, 375 F.3d 508 (2004), and held that;

> "[1] The relevant 'statutory maximum penalty', beyond
> which a defendant may not be sentenced based upon
> facts other than fact of prior convictions, unless
> such facts are determined by a jury beyond a
> reasonable doubt, under the Apprendi rule, is the
> maximum sentence a judge may impose solely on the
> basis of the facts reflected in the jury verdict or
> admitted by the defendant." Id., 375 F.3d at 510.

    under Apprendi,530 U.S. 490, Blakely, 542 U.S. 296,
and Booker, 375 F.3d 510 (2004), the court could not
enhance Perez's base offense level by eight (8) levels.
Because the court in this case gave an Apprendi jury
instruction and verdict form, and because Apprendi cast
the constitutionality of the Federal Sentencing Guidelines
into considerable doubt, and because the enhancements to

31

Perez's base offense level presented circumstances that were called into question by <u>Apprendi</u>, sentencing counsel was constitutionally ineffective for failing to preserve a Sixth Amendment challenge to perez's sentence. See <u>Nichols v United States</u>, 501 F.3d 542 (6th Cir. 2007) (Holding that defense counsel was constitutionally ineffective for failing to preserve a Sixth Amendment challenge under <u>Apprendi</u> to the defendant's sentence).

For the above reasons, Perez is entitled to resentencing.

## IV

**PEREZ WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF THE FEDERAL CONSTITUTION'S SIXTH AMENDMENT WHERE APPELLATE COUNSEL FAILED TO RAISE INEFFECTIVE ASSISTANCE OF TRIAL AND SENTENCING COUNSEL ON DIRECT APPEAL WHERE THESE ISSUES WERE SUFFICIENTLY DEVELOPED IN THE RECORD TO ALLOW APPELLATE REVIEW, AND WHERE APPELLATE COUNSEL, AFTER SUCCESSFULLY ARGUING A BLAKELY ISSUE IN THE PETITION FOR WRIT OF CERTIORARI, ABANDONED PEREZ'S BLAKELY ISSUE ON REMAND AND CONCEDED TO A LIMITED REMAND THAT WAS INSUFFICIENT TO ADDRESS THE SIXTH AMENDMENT JURY TRIAL VIOLATION UNDER BLAKELY**

As previously stated, the test for analyzing ineffective assistance of counsel claims is the familiar two-prong test articulated in Strickland v Washington, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984): First, a defendant must show that counsel's performance was constitutionally deficient, and second, the defendant must demonstrate that he suffered prejudice as a result of counsel's deficient performance. Id.

In the Seventh Circuit, the court of appeals will review an issue of ineffective assistance of counsel if the "issue of competence is clear-cut and it can be conclusively determined from the trial record." United States v Ayala-Rivera, 954 F.2d 1275 (7th Cir. 1992), citing Johnson v United States, 805 F.2d 1284, 1290 (7th Cir. 1986).

On direct appeal from conviction in the United States District Court, Perez was represented by appointed counsel Robert Handelsman. Perez's Sixth Amendment issue concerning appellate counsel is three fold:

First, Perez asserts that his appellate counsel

33

provided ineffective assistance of counsel in violation
of the Federal Constitution's Sixth Amendment because
counsel failed to raise a claim of ineffective assistance
of trial counsel on direct appeal where the record was
sufficiently developed to allow the court of appeals to
examine the issue.

More specifically, during Perez's trial, trial
counsel Robert Aronson, without Perez's knowledge and
consent, 1) Stipulated to the qualifications of a DEA
chemist in which counsel had no actual knowledge, and 2)
Stipulated that the marijuana allegedly analyzed by the
DEA chemist was "marijuana", and again to which counsel
had no actual knowledge, and contrary to Perez's not guilty
plea and his right to have the government prove, without
defense counsel's assistance, every element of the charged
offenses beyond a reasonable doubt, (Tr. P.245-246).

In addition, the government's evidence at trial
showed repeated breaks in the chain of custody of the
alleged marijuana, (Tr. P.238,240,241,242), and conflicting
testimony by government witnesses in which the DEA chemist
testified that the alleged marijuana was in "bricks", and
the government's leading witness (Garza) testified that
it was "bales", (Tr. P.267).

Because the government's evidence showed repeated
breaks in the chain of custody, and conflicting testimony
by government witnesses concerning this evidence, trial
counsel should have challenged the authentication of
identification to the alleged marijuana, and should not
have stipulated blindly to the qualifications of the DEA
chemist, and that what the chemist analyzed was "marijuana".
Had trial counsel challenged the "authentication of
identification" as required as a condition precedent to
admissibility under Federal Rule of Evidnece 901(a), and
not made the two stipulations concerning the evidnece and
the qualifications of the DEA chemist, there is a reasonable
probability that the jury in this case would have acquitted

34

Perez. No reasonable competent attorney, under any such
circumstances, would have made these stipulations and failed
to  test the government's evidence, when the obvious result
was contrary to his client's [not guilty plea], and only
assisted in his client's conviction. There was no tactical
decision involved in trial counsel's actions,and Perez was
clearly prejudiced as a result of his counsel's actions
where the record in this case is completely devoid of any
evidence proving that the alleged marijuana analyzed by the
DEA chemist was in fact the same marijuana allegedly collected
by law enforcement in this case, and that the evidence
analyzed by the DEA chemist was in fact "marijuana".

Where there is a reasonable probability that the
appellate court would have reversed Perez's conviction
for trial counsel's prejudicial errors, appellate counsel
was "equally ineffective in failing to raise the issue for
appellate review." U.S. Ex Rel. Barnard v Lane, 819 F.2d
798, 805 (7th Cir. 1987).


Second, Perez asserts that he received constitutionally
inadequate appellate counsel because counsel failed to
raise and argue ineffective assistance of sentencing counsel
where sentencing counsel allowed the district court to
enhance Perez's sentence in violation of Apprendi v New
Jersey, 530 U.S. 490 (2000) without objection. The facts
surrounding this claim are straightforward:

Apprendi v New Jersey was decided by the supreme
Court on June 26, 2000. Perez had a jury trial in April
2001. The district court in this case gave an Apprendi jury
instruction (In.#26)(Tr. P.372-375), and verdict form (Ex B )
for the jury to decide the drug amount, beyoud a reasonable
doubt. The indictment charged a drug amount of 3,248 pounds.
The jury found Perez responsible for atleast 1,000 kilograms
(well within the amount charged in the indictment). At

sentencing, defense counsel (Gambino) argued that Perez
should be sentenced at a base offense level of 32, and not
be enhanced for additional drug amount, obstruction of
justice, or leader/organizer role, (Sen. Tr. P.17).
However, the court increased Perez's base offense level
by eight (8) levels (to a level 40) based on additional
drug amount, obstruction of justice, and leader role, all
of which was not found by the jury or admitted by Perez.
The court sentenced Perez to two concurrant 360 month terms
of imprisonment. Defense counsel however, did not object
to the court's enhancements under Apprendi. On direct appeal
Perez was represented by different counsel (Robert Handelsman).
Appellate counsel filed an Anders brief (Anders v California,
386 U.S. 738, 18 L.Ed.2d 493, 87 S.Ct. 1396 (1967)),and
claimed that Perez had "no appealable issues" for appeal.
Based on appellate counsel's assertions,the appellate court
issued an order to dismiss Perez's appeal, (Ex C ).
However, while Perez was on direct appeal, Blakely v
Washington, 542 U.S. 296 (2004) was decided by the Supreme
Court, and United States v Booker, 375 F.3d 508 (2004) was
decided by the Seventh Circuit Court of Appeals. Had
appellate counsel raised the ineffective assistance of
sentencing counsel on sentencing counsel's failure to
object under Apprendi to the district court's enhancements,
both Blakely and Booker, 375 F.3d, would have supported
appellate counsel's argument under Apprendi, and required
resentencing.

     In United States v Reinhart, 357 F.3d 521, 530-531
(5th Cir. 2004), the court held that when a claim of
ineffective assistance of counsel is premised on counsel's
failure to raise an issue on appeal, Strickland prejudice
prong first requires showing that court of appeals would
have afforded relief on appeal. In the instant case, there
is simply no doubt that the appellate court would have
afforded Perez relief. The Seventh Circuit Court of Appeals'

Booker decision clearly states that a district court
cannot do what the district court did in Perez's case
(i.e., enhance Perez's sentence from 151 months to 360
months based on facts not found by the jury or admitted
by Perez). Because Perez was on direct appeal at the time
the Supreme Court decided Blakely, and the Seventh Circuit
Court of Appeals decided Booker, 375 F.3d 508 (2004), the
rule of law announced in these cases applied to Perez's
case. See Griffith v Kentucky, 479 U.S. 314, 322, 93 L.Ed.
2d 649, 107 S.Ct. 708 (1987) ("the integrity of judicial
review requires the application of the new rule to all
similar cases pending on direct review"). However, because
appellate counsel failed to raise this issue on direct
appeal Perez was not given the benefit of the seventh
Circuit Court of Appeals Booker decision.

The district court sentenced Perez to two 360 month
terms of imprisonment, based on facts not found by the
jury beyond a reasonable doubt or admitted by Perez. The
eight (8) level enhancement to Perez's base offense level
was prohibited by the Supreme Court's rule of law announced
in Apprendi, 530 U.S. 490 (2000), and affirmed in Blakely,
542 U.S. 296 (2004). Further, Seventh Circuit precedent,
as announced in Booker, 375 F.3d 508 (2004), prohibited
the district court's enhancements to Perez's base offense
level. Without these enhancements, the maximum sentence
the district court could have imposed was 151 months.
Under these facts, appellate counsel was not only
constitutionally ineffective in failing to raise this
issue for appellate review, but Perez was prejudiced by
counsel's failure where under applicable law, Perez would
have been afforded relief on appeal and on remand.


Third, Perez asserts that appellate counsel was
constitutionally ineffective where appellate counsel, after

successfully arguing Perez's <u>Blakely</u> issue on Petition
for Writ of Certiorari, abandoned the issue completely on
remand and stipulated to a limited <u>Paladino</u> remand (<u>United</u>
<u>States v Paladino</u>, 401 F.3d 471,481 (7th Cir. 2005)), a
remedy that was clearly inadequate to address the Sixth
Amendment jury trial violation raised by Perez first in his
motion for rehearing en banc in the court of appeals and
secondly, in his Petition for Writ of Certiorari in the
United States Supreme Court (i.e., The same issue in which
the Supreme Court reversed the judgment and remanded the
case back to the court of appeals).

Specifically, Perez raised his <u>Blakely</u> issue in his
pro se motion for rehearing en banc because, as previously
stated, appellate counsel failed to raise [any] of Perez's
appeal issues. Instead, appellate counsel filed an <u>Anders</u>
brief claiming that Perez had no arguable issues for appeal,
(Ex C ). However, after the court of appeals compelled
appellate counsel to file a petition for Writ of Certiorari
on behalf of Perez, appellate counsel then raised Perez's
<u>Apprendi</u> and <u>Blakely</u> issues asking the Supreme Court:

    I. "Whether a <u>Blakely</u> issue can be raised for the
       first time on a petition for Certiorari", and

    II. "Whether relevant conduct, role in the offense
       and obstruction was proven beyond a reasonable
       doubt as required by <u>Blakely</u>".

The issue in this case was not whether the district
court would sentence Perez to the same sentence if the
guidelines had been advisory, but rather, whether the
district court violated Perez's right to jury trial by
enhancing his sentence by eight (8) levels based on facts
not found by the jury beyond a reasonable doubt, or

admitted by perez. Because the law applicable to Perez's
case was the rule of law announced in Apprendi, 530 U.S.
490 (2004), Blakely, 542 U.S. 296 (2004), and Booker, 375
F.3d 508 (2004).

The Supreme Court's decision in United States v
Booker, 543 U.S. 220 (2005), applied to Perez's Apprendi
and Blakely issue, does not adequately address perez's
Blakely issue, and further, applied to Perez's case, Booker,
543 U.S. 220 (2005), as previously argued above, raises
serious ex post facto problems in this case.

Appellate counsel's actions in abandoning Perez's
Blakely issue after successfully arguing Blakely in the
Supreme Court was also recognized by the appellate court
when the court responded that:

> "Neither Party disputes the accuracy of the advisory
> guideline range which was calculated at 360 months
> to life." (Ex_G_)

Even the appellate court recognized that appellate
counsel abandoned Perez's Blakely issue on remand, when
it was in fact Perez's guideline range that was disputed
in Perez's pro se motion for rehearing en banc, and in
his Petition for Writ of Certiorari in the Supreme Court.

Appellate counsel clearly should not have conceded
to a limited remand to merely ask the district court if it
would give Perez the same sentence if the guidelines had
been advisory because [this] was neither the issue raised
by Perez, nor the proper remedy to address the Sixth
Amendment jury trial issue raised by Perez.

Had appellate counsel raised and argued Perez's
Blakely issue under applicable law, the district court
could not have sustained its eight (8) level enhancement
to Perez's sentence, and Perez would have been resentenced
to 151 months, the maximum sentence allowed by the jury

verdict in this case.

There is no doubt that appellate counsel in this case provided constitutionally inadequate representation in abondoning Perez's <u>Blakely</u> issue on remand, and conceding to a limited remand. There is also no doubt that Perez was prejudiced by counsel's performance where, had Perez had effective counsel, he would have received 151 months, a generation apart from 360 months. Under the two prong test set forth in <u>Strickland</u>, 466 U.S. 668 (1984), appellate counsel provided constitutionally inadequate representation, and Perez is entitled to resentencing.

**V**

**THE DISTRICT AND APPELLATE COURT'S FAILURE TO APPLY APPRENDI v NEW JERSEY, 530 U.S. 466 (2000), BLAKELY v WASHINGTON, 542 U.S. 296 (2004), AND UNITED STATES v BOOKER, 375 F.3d 508 (2004), TO THE INSTANT CASE IS IN VIOLATION OF THE FEDERAL CONSTITUTIONΛS XIV AMENDMENT EQUAL PROTECTION CLAUSE AS ANNOUNCED BY THE UNITED STATES SUPREME COURT IN GRIFFITH V KENTUCKY, 479 U.S. 314 (1987).**

Prior to Perez's trial, the Supreme Court had already held that:

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,and proved beyond a reasonable doubt." Apprendi v New Jersey, 530 U.S. 466 (2000).

While Perez was on direct appeal, the United States Supreme Court affirmed their holding in Apprendi and further held that:

"The 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v Washington, 542 U.S. 296,(decided June 24, 2004).

Also while Perez was on direct appeal, the Seventh

41

Circuit Court of Appeals held that:

> **"Sentencing increases based upon sentencing judge's**
> **factual determinations pursuant to the sentencing**
> **guidelines violated defendant's Sixth Amendment**
> **right to have jury determine drug quantity and**
> **whether he obstructed justice."** United States v
> Booker, 375 F.3d 508,(decided July 9, 2004).

The appellant court mandate in Perez'z case did
not issue until July 28, 2004, several weeks [after] both
Blakely and Booker had been decided by the Supreme Court,
and the Seventh Circuit Court of Appeals. Although Perez
did raise his Sixth Amendment Jury Trial Issue in his
Pro Se Motion For Rehearing en banc, he was arbitrarily
denied review of his sentence under applicable standards
of law as held in Apprendi, Blakely, and Booker, 375 F.3d
508. As a result, Perez's direct appeal was dismissed, and
his motion for rehearing en banc was denied, in violation
of Griffith v Kentucky, 479 U.S. 314 (1987), Teague v Lane,
489 U.S. 288 (1989), and the Equal Protection Clause of the
Federal Constitution's XIV Amendment.

In Griffith v Kentucky, 479 U.S. 314, 322, 93 L.Ed.2d
649, 107 S.Ct. 708 (1987), the Supreme Court held that:

> **"Failure to apply a newly declared constitutional**
> **rule to criminal cases pending on direct review**
> **violates basic norms of constitutional adjudication."**
> Id., 479 U.S. at 322.

The court gave two reasons for its decision. First
the court held that:

"The integrity of judicial review requires the
application of the new rule to all similar
cases pending of direct review." Id., at 323.


Second, the court held that:


"Selective application of new rules violates the
the principle of treating similarly situated
defendants the same, we refuse to continue to
tolerate the inequity that resulted from not
applying new rules retroactively to defendants
whose cases had not yet become final." Teague v
Lane, 489 U.S. 288, 304, 103 L.Ed.2d 334, 109 S.Ct.
1060 (1989), citing Griffith, Supra, 479 U.S. 323-24.


At the time that the Supreme Court reversed the
decision of the appellate court, and remanded Perez's
case "for furhter consideration in light of United States
v Booker, 543 U.S. 220 (2005)" (Ex E   ), the court did
so in accord with its holding in Griffith v Kentucky,
479 U.S. 314 (1987) ("[A] new rule for the conduct of
criminal prosecutions is to be applied retroactively to
all cases...pending on direct review or not yet final,
with no exception for cases in which the new rule
constitutes a 'clear break' with the past"). Booker,
543 U.S. 268.

The Supreme Court should not have to remind the
district and appellate courts to treat similarly situated
defendants the same. But the fact is, had Perez not been denied
equal protection of the law, and the courts applied Apprendi,
530 U.S. 490, Blakely, 542 U.S. 296, and Booker, 375 F.3d
508, as required by Griffith v Kentucky, 479 U.S. 322,
Perez would not have been compelled to file a petition


43

for Writ of Certiorari in the supreme Court.

Because Perez was on direct appeal at the time the Supreme Court decided <u>Blakely</u>, 542 U.S. 296 (2004), and also at the time the Seventh Circuit Court of Appeals decided <u>Booker</u>, 375 F.3d 508 (2004), and because the rule of law announced in these cases does not present ex post facto problems in applying them to Perez's case, Perez is entitled to the application of the rule of law announced in <u>Apprendi</u>, 530 U.S. 490 (2000), <u>Blakely</u>, 542 U.S. 296 (2004), and <u>Booker</u>, 375 F.3d 508 (2004), to his Sixth Amendment Jury Trial Issue. Failure to apply the rule of law announced in <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>, 375 F.3d 508, to Perez's Sixth Amendment Jury Trial issue is contrary to the Supreme Court's holding in <u>Griffith v kentucky</u>, 479 U.S. 314, and denied perez the equal protection of the law as articulated in <u>Amendment XIV</u> of the Federal Constitution. For these reasons, Perez is entitled to resentencing.

## VI

**THE NEW RULE OF LAW ANNOUNCED IN UNITED STATES v BOOKER, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), CANNOT LAWFULLY BE APPLIED TO PEREZ'S CASE WHERE, IN DOING SO, VIOLATES THE EX POST FACTO CLAUSE OF ARTICLE I, §9, cl.3 OF THE FEDERAL CONSTITUTION WHERE BOOKER IS 1) RETROSPECTIVE 2) DISADVANTAGES PEREZ, AND 3) IS MORE ONEROUS THAN THE PRIOR LAW ESTABLISHED AT THE TIME OF PEREZ'S TRIALS SENTENCE AND DIRECT APPEAL.**

Two hundred and ten years ago, in Calder v Bull, 3 Dall 386, 1 L.Ed 648 (1798), the supreme Court first considered the scope of the ex post facto prohibition, articulated in Article I, §9, cl.3, and Article I, §10, cl.1 of the united States Constitution.

In Calder, the Supreme Court, through Justice Chase, summarized its understanding of what fell within the words and intent of the prohibition:

> "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender." Id., at 390, 1 L.Ed 648.

One hundred and twenty seven years after Calder, the

45

Supreme Court, in Beazell v Ohio, 269 U.S. 167, 169-170,
70 L.ED 216, 46 S.Ct. 68 (1925) again summarized its
understanding of what fell within the words and intent of
the ex post facto prohibition:

> "It is settled, by decisions of this courtyso well
> known that their citation may be dispensed with,
> that any statute which punishes as a crime an act
> previously committed, which was innocent when done;
> which makes more burdensome the punishment for a
> crime, after its commission, or which deprives one
> charged with crime of any defense available
> according to law at the time when the act was
> committed, is prohibited as ex post facto."
> Id., at 169-170.

In the past eight decades since its ruling in
Beazell, the Supreme Court has repeatedly reaffirmed its
holding in Calder, 1 L.Ed 648 (1798), and Beazell, 46
S.Ct. 68 (1925). See Weaver v Graham, 450 U.S. 24, 67
L.Ed.2d 17, 101 S.Ct. 960 (1981); Miller v Florida, 482
U.S. 423, 96 L.Ed.2d 351, 107 S.Ct. 2446 (1987); and
Carmell v Texas, 529 U.S. 513, 146 L.Ed.2d 577, 120
S.Ct. 1620 (2000).

Thus, in the past two hundred and ten years, the
Supreme Court's jurisprudence of the ex post facto clause
has not changed.

In Weaver v Graham, the Supreme Court held that to
fall within the ex post facto prohibition, two critical
elements must be present:

> "First, the law must be retrospective, that is, it
> must apply to events occurring before its enactment;
> and second, it must disadvantage the offender affected

46

by it." Id., 450 at 29.

In addition to these two elements, for a law to
be ex post facto, "it must be more onerous than the prior
law." Dobbert v Florida, 432 U.S. 282, 294, 53 L.Ed.2d
344, 97 S.Ct. 2290 (1977).

In both, the district court, and the appellate
court proceedings in the instant case, the laws that
were established at that time were those announced by
the supreme Court in Jones v United States, 526 U.S.
227, 143 L.Ed.2d 311, 199 S.Ct. 1215 (1999); Apprendi
v New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d
435 (2000); Blakely v Washington, 542 U.S. 296, 159
L.Ed.2d 403, 124 S.Ct. 2531 (2004); and by the Seventh
Circuit Court of Appels in United States v Booker, 375
F.3d 508 (7th Cir. 2004).

Jones was decided by the Supreme Court on March 24,
1999. In Jones, the Supreme Court held that:

> "a series of Supreme Court decisions in the preceding
> quater centry suggested... the principle that under
> the due process clause of the Federal Constitution's
> Fifth Amendment and under the notice and jury trial
> guarantee of the Constitution's Sixth Amendment, any
> fact (other than the fact of a prior conviction)
> that increases the maximum penalty for a crime, had
> to be charged in an indictment, submitted to a jury,
> and proved beyond a reasonable doubt." Id., 526 U.S.
> 227, 143 L.Ed.2d 311, 119 S.Ct. 1215 (1999).

In a concurring opinion, Stevens J. expressed the
view that (1) "it is unconstitutional for a legislature to
remove from the jury the assessment of facts that increase
the prescribed ranges of penalties to which a criminal

47

defendant is exposed", and (2) "such facts must be established by proof beyond a reasonable doubt." Id., 526 U.S. at 252-53.

Apprendi was decided on June 26, 2000. In Apprendi, the Supreme Court reaffirmed its holding in Jones and held that:

> "other than the fact of a prior conviction, any fact
> that increases the penalty for a crime beyond the
> prescribed statutory maximum, must be submitted to
> a jury, and proved beyond a reasonable doubt." Id.,
> 530 U.S. at 490.

Both Jones and Apprendi were decided long before Perez's trial, which took place in April 2001. The district court gave an Apprendi jury instruction (In.#26), and verdict form at Perez's trial (Exhibit  B  ).

Blakely was argued in the Supreme Court on March 23, 2004, and was decided on June 24, 2004. In Blakely, the Supreme Court held that:

> "This case requires us to apply the rule we expressed
> in Apprendi v New Jersey, 530 U.S. 466, 490 (2000):
> other than the fact of a prior conviction, any fact
> that increases the penalty for a crime beyond the
> prescribed statutory maximum must be submitted to a
> jury, and proved beyond a reasonable doubt ." Id.,
> 542 U.S. 296, 159 L.Ed.2d 403, 124 S.Ct. 2531 (2004).

Justice Scalia, delivering the opinion for the court, continued to explain:

> "Our precedents make clear that the 'statutory maximum'
> for Apprendi purposes is the maximum sentence a judge
> may impose solely on the basis of the facts reflected

48

in the jury verdict or admitted by the defendant.
See Ring v Arizona, 536 U.S. 584, at 602, 153
L.Ed.2d 556, 122 S.Ct. 2428 (2002) ("the maximum
he would receive if punished according to the
facts reflected in the jury verdict alone" (quoting
Apprendi, Supra, at 483)); Harris v United States,
536 U.S. 545, 563 (2002)(Plurality opinion)(Same);
cf. Apprendi, Supra, at 488 (facts admitted by the
defendant). In other words, the relevant 'statutory
maximum' is not the maximum sentence a judge may
impose after finding additional facts, but the
maximum he may impose without any additional
findings. When a judge inflicts punishment that
the jury's verdict alone does not allow, the
jury has not found all the facts 'which the law
makes essential to the punishment', 1 J. Bishop,
Criminal Procedure § 87, P. 55 (2d ed. 1872), and
the judge exceeds his proper authority."

United States v Booker, 375 F.3d 508 (7th Cir. 2004)
was decided by the Seventh Circuit Court of Appeals on July
9, 2004. In Booker, the court held that:

First:
"The relevant 'statutory maximum penalty,' beyond
which a defendant may not be sentenced based upon
facts other than fact of prior convictions, unless
such facts are determined by a jury beyond a
reasonable doubt, under the Apprendi rule, is the
maximum sentence a judge may impose solely on
the basis of the facts reflected in the jury
verdict or admitted by the defendant." Id., 375
F.3d 508 (7th Cir. 510).
Second:
"Under Blakely, when a sentencing judge inflicts

punishment that the jury's verdict alone does not
allow, the jury has not found all the facts which
the law makes essential to the punishment, as
required by the Sixth Amendment right to jury
trial, and the judge exceeds his proper authority."
Id., at 510.

Both Blakely, 124 S.Ct. 2531 (2004), and Booker, 375
F.3d 508 (2004), were decided while Perez was on direct
appeal. In fact, in his pro se motion for rehearing, Perez
did raise his Sixth Amendment Jury trial issue under
Blakely. See (Exhibit  C  ). The rule of law announced in
Apprendi, 530 U.S. 490, and followed in Blakely, 542 U.S.
296, and Booker, 375 F.3d 508 (7th Cir. 2004) did, and
should have been applied to Perez'z case. However, they
were not. Perez's direct appeal was denied. (Ex  D  ).

On petition for Writ of Certiorari, the Supreme
Court reversed and remanded. In its order, the court
held that:

"The motion of petitioner for leave to proceed in
forma pauperis and the petition for Writ of
Certiorari are granted. The judgment is vacated
and the case is remanded to the United States
Court of Appeals for the Seventh Circuit, for
further consideration in light of United States
v Booker, 543 U.S. 220, 160 L.Ed.2d 621, 125 S.Ct.
738 (2005)." (Ex  E  ).

In United States v Booker, 125 S.Ct. 738 (2005),
the Supreme Court held that:

"To engraft the Court's Constitutional requirement
onto the sentencing statutes, however, would

destroy the system. It would prevent a judge from
relying upon a presentence report for factual
information, relevant to sentencing, uncovered
after the trial." Id., 543 U.S. at 252.

In other words, the Supreme Court held in Booker,
that a sentencing court could again make factual findings
that increases a defendant's sentence, without such facts
having first been found by a jury beyond a reasonable
doubt, or admitted by the defendant. The Supreme Court
reasoned that, because the Guidelines would now be made
advisory instead of mandatory, that such judicial fact-
finding was again permissible.

While there is no doubt that an advisory guideline
scheme has, and will continue to benefit some defendant's,
it has also worked an injustice for other defendants, as
it has perez in the instant case. Under Booker, 125 S.Ct.
738 (2005) and United States v Paladino, 401 F.3d 471 (7th
Cir. 2005), all that the district court was required to do
on remand, is issue a one sentence order merely stating
that he would give Perez the same sentence had he known
the guidelines were advisory at the time of sentencing.
Both of these remedies under Booker, 125 S.Ct. 738, and
Paladino, 401 F.3d 471, fail to adequately address the
Sixth Amendment jury trial violation raised by Perez in
his motion for rehearing in the seventh Circuit Court of
Appeals, and in his petition for Writ of Certiorari in
the Supreme Court.

Perez has never raised, nor argued, that he should
have been sentenced under an advisory guideline scheme.
Perez raised, and argued, that the district court increased
his base offense level by eight (8) levels in violation of
Apprendi, 530 U.S. 490, Blakely, 124 S.Ct. 2531 (2004), and
Booker, 375 F.3d 508 (2004), the applicable law at the time

of Perez's trial, sentencing, and direct appeal.

The problem with the Supreme Court's decision in
Booker, 543 U.S. 252, is that, applied to the instant
case, it raises serious ex post facto concerns when applied
to a Sixth Amendment jury trial violation that occured
long before the decision in Booker was handed down. First,
it is retrospective, in that it has been applied to Perez's
case, where the decision in Booker, 543 U.S. 252, was not
handed down until [after] Perez's trial, sentencing, and
direct appeal. Second, the Supreme Court's decision in
Booker disadvantages Perez in that it has allowed the court
to circumvent the law applicable to Perez's case at the
time of his trial, sentencing, and direct appeal. And third,
the Supreme Court's decision in Booker, as applied to the
instant case, is more onerous than the law in effect at the
time of Perez's trial, sentencing, and direct appeal, because
Booker, 543 U.S. 252, allows the court to increase a
defendant's sentence based on judicial fact-finding, and
Apprendi, Blakely, and Booker, 375 F.3d 508, does not.
These are the exact three elements that the Supreme Court
has said must be present in order for a new rule of law to
fall within the ex post facto prohibition. See Weaver v Graham,
Supra, 450 U.S. at 29, and Dobbert v Florida, Supra, 432 U.S.
at 294.

Because the Supreme Court's decision in Booker, 125
S.Ct. 738, as applied to the instant case, is 1) retrospective,
2) disadvantages Perez's, and 3) is more onerous than the law
applicable at the time of Perez's trial, sentencing, and
direct appeal, it clearly falls within the ex post facto
prohibition of Article I, §9, cl.3 of the Federal
Constitution and does not apply to Perez's case.

Perez was denied due process of law in violation of
the Federal Constitution's Sixth Amendment Due Process Clause
where neither Booker, 125 S.Ct. 738, nor Paladino, 401 F.3d

52

471, provided an adequate remedy to test the Sixth Amendment Jury Trial violation raised by Perez on direct appeal and in his petition for Writ of Certiorari in the Supreme Court, and where both  Booker, 125 S.Ct 738, and Paladino, 401 F.3d 471, are ex post facto under Article I, §9, cl.3 when applied to the instant case.

## CONCLUSION:

In the instant motion, Perez raises six claims of constitutional error. This court could reverse perez's conviction and/or resentence Perez on any or all of Perez's constitutional claims. Perez was deprived the effective assistance of counsel at every significant stage (Trial, Sentencing, and Direct Appeal) of the proceedings in this case. As a result, Perez was convicted and sentenced in violation of his constitutional rights, and deprived of adequate appellate review, as guaranteed him under the Federal Constitution, as the Federal Constitution guarantees all persons charged with a criminal offense the right to a fair trial and to the effective assistance of counsel for his defense. Perez was deprived both, and if this court were to sustain Perez's conviction and sentence under the facts and applicable law of this case, the result would be a miscarriage of justice. At a minimum, this case requires resentencing.

RESPECTFULLY SUBMITTED

Raul Perez, Pro Se

## REQUEST FOR EVIDENTIARY HEARING:

Perez requests an evidentiary hearing in order to vindicate his constitutional claims.

Raul Perez, Pro Se


## REQUEST FOR APPOINTMENT OF COUNSEL:

Perez requests appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, to assist him in this litigation because he cannot afford to retain counsel. Please see attached In Forma Pauperis Motion and six month inmate account printout.

Raul Perez, Pro Se