*M HN*

**08CV1141**

CASE NO    **JUDGE ZAGEL**

**MAG.JUDGE COX**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

RAUL PEREZ,
PETITIONER,

# FILED

FEB 2 5 2008 *aen*

2 - 25 - 2 0 0 8

**MICHAEL W. DOBBINS**

**CLERK, U.S. DISTRICT COURT**

vs.

UNITED STATES OF AMERICA,
RESPONDENT.

EXHIBITS

RE:    28 U.S.C. § 2255

## EXHIBIT TABLE OF CONTENTS                    **PAGE**

Indictment, (Exhibit - A)....................................1-7

Jury Verdict, (Exhibit - B)..................................8-9

Appellate Court Remand Order, (Exhibit - C)...................10-11

Appellate Court Rehearing Order, (Exhibit - D)...............12

Supreme Court Order/Remand, (Exhibit - E)....................13

Paladino Statement & Supp. Statement, (Exhihit - F)..........14-17

Appellate Court Order after Remand, (Exhibit - G)............18-19

Trial Transcript (P.240,241,242,244,245,246,247,267,372,
                  373,374,375)..............................20-31

Petition For Writ of Certiorari.............................32-39

Sentencing Transcript (complete)............................40-66

Supreme Court Denial of Certiorari (February 26, 2007).......67

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 09 2000

JUDGE ZAGEL

UNITED STATES OF AMERICA            )
                                    )
                                    )
v.                                  )     No. 00 CR 39
                                    )     Violations: Title 21,
                                    )     United States Code,
                                    )     Sections 841(a)(1) and
SERGIO PELAYO,                      )     846;  Title 18, United
LUGARDO A. GUTIERREZ,               )     States Code, Section 2
JUAN PELAYO,                        )
DANIEL PELAYO-LANDAZURI,            )
RODRIGO TORES JR.,                  )
JUAN EXIQUIO GARZA JR.,             )
AARON ISRAEL QUINTERO,              )
JOSE LOPEZ, a/k/a HORACIO BADILLO,  )
CLARENCE H. POTEET, and             )
RAUL PEREZ.                         )

MAGISTRATE JUDGE

## COUNT ONE

The SPECIAL SEPTEMBER 1999 GRAND JURY charges:

1.    During a period beginning no later than in or about
January 3, 2000, and continuing until at least January 13, 2000, at
Chicago, in the Northern District of Illinois, Eastern Division,
and elsewhere,

SERGIO PELAYO,
LUGARDO A. GUTIERREZ,
JUAN PELAYO,
DANIEL PELAYO-LANDAZURI,
RODRIGO TORES JR.,
JUAN EXIQUIO GARZA JR.,
AARON ISRAEL QUINTERO,
JOSE LOPEZ, a/k/a HORACIO BADILLO,
CLARENCE H. POTEET, and
RAUL PEREZ,

defendants herein, conspired with each other and with others known
and unknown to the Grand Jury, knowingly and intentionally to
possess with intent to distribute quantities of mixtures containing
marijuana, a Schedule I Narcotic Drug Controlled Substance, in
violation of Title 21, United States Code, Section 841(a)(1).

2.    It was part of the conspiracy that defendant RAUL PEREZ arranged for defendant CLARENCE POTEET, a truck driver, to travel to Edinburg, Texas in order to pick up a load of marijuana concealed beneath and behind a load of cabbages, and then to drive to the Chicago area where he would deliver the load of marijuana to SERGIO PELAYO, LUGARDO A. GUTIERREZ, JUAN PELAYO, DANIEL PELAYO-LANDAZURI, RODRIGO TORES JR.,
JUAN EXIQUIO GARZA JR., AARON ISRAEL QUINTERO,  and JOSE LOPEZ, a/k/a HORACIO BADILLO, who would unload the truckload of marijuana.

3.    It was further part of the conspiracy that on or about January 3, 2000, defendant RAUL PEREZ contacted defendant CLARENCE POTEET and arranged for POTEET to drive a tractor trailer containing approximately 3,248 pounds of marijuana from Edinburg, Texas to the Chicago area, in exchange for $150,000 in United States currency.

4.    It was further part of the conspiracy that on or about January 8, 2000, defendant RAUL PEREZ directed defendant CLARENCE POTEET to pick up a load of cabbages to conceal the load of marijuana, and then to proceed to a ranch located in Edinburg, Texas in order to pick up the load of marijuana.

5.    It was further part of the conspiracy that on or about January 8, 2000, defendant JUAN GARZA and others known and unknown to the grand jury loaded approximately 3,248 pounds of marijuana into a tractor trailer provided by defendant CLARENCE POTEET.

6.    It was further part of the conspiracy that on or about January 8, 2000, defendant RAUL PEREZ instructed defendant CLARENCE

2

POTEET to drive the load of marijuana to the Chicago area, to telephone PEREZ daily for the duration of the trip, and to contact PEREZ when POTEET was approximately two hours away from Chicago in order to receive instructions regarding the location where the marijuana was to be delivered.

7. It was further part of the conspiracy that on or about January 8, 2000, defendant CLARENCE POTEET left Edinburg, Texas, driving the tractor trailer containing approximately 3,248 pounds of marijuana, concealed by a load of cabbages, bound for the Chicago area.

8. It was further part of the conspiracy that on or about January 11, 2000, defendant CLARENCE POTEET arrived at the Bolingbrook Truck Stop, located at Interstate 55 and Route 53 in Bolingbrook, Illinois, and telephoned defendant RAUL PEREZ, who instructed POTEET to wait at the truck stop for a telephone call from defendant SERGIO PELAYO concerning the unloading of the marijuana.

9. It was further part of the conspiracy that on or about January 11, 2000, defendant SERGIO PELAYO telephoned defendant CLARENCE POTEET and told him he would arrive at the Bolingbrook truck stop in approximately thirty minutes.

10. It was further part of the conspiracy that on or about January 12, 2000, defendant RAUL PEREZ telephoned defendant CLARENCE POTEET and told POTEET that he would send an associate to meet POTEET concerning the unloading of the truckload of marijuana.

11. It was further part of the conspiracy that on or about

3

January 12, 2000, defendant SERGIO PELAYO met with defendant CLARENCE POTEET and instructed POTEET to drive the load of marijuana and follow PELAYO to a location where POTEET could drop off the load of marijuana.

12. It was further part of the conspiracy that on or about January 12, 2000, defendant SERGIO PELAYO led defendant CLARENCE POTEET to Metropolitan Trucking, 1625 E. 107th Street, Bolingbrook, Illinois, where PELAYO advised POTEET to park the truck, unhook the trailer containing the load of marijuana from the tractor, and go to the Bolingbrook Truck Stop, where POTEET would be notified when he could return for the trailer.

13. It was further part of the conspiracy that from approximately 9:13 p.m. on or about January 12, 2000 to approximately 1:09 a.m., on January 13, 2000, defendant SERGIO PELAYO and others known and unknown to the grand jury conducted countersurveillance of the trailer of marijuana at Metropolitan Trucking.

14. It was further part of the conspiracy that on or about January 13, 2000, defendant RAUL PEREZ telephoned defendant CLARENCE POTEET and instructed him to pick up his trailer, and informed him that he would receive his "receipts," which was code for payment for transporting the marijuana, in the morning at POTEET's hotel.

15. It was further part of the conspiracy that on or about January 13, 2000 defendant SERGIO PELAYO telephoned defendant CLARENCE POTEET and asked to meet with him.

4

16.  It was further part of the conspiracy that on or about January 13, 2000, defendant SERGIO PELAYO telephoned and later met with defendant CLARENCE POTEET.  PELAYO informed POTEET that they did not unload the "product" from the trailer because there was too much vehicle activity surrounding the trailer on the previous evening, and further advised POTEET that he would contact POTEET later in the afternoon to make arrangements to unload the trailer at another location.

17.  It was further part of the conspiracy that on or about January 13, 2000, defendant SERGIO PELAYO telephoned and later met with defendant CLARENCE POTEET.  PELAYO advised POTEET that he intended to use G&G Trucking at 11 S. 360 Madison, Hinsdale, Illinois in order to unload the marijuana.

18.  It was further part of the conspiracy that on or about January 13, 2000, defendant SERGIO PELAYO led defendant CLARENCE POTEET, driving the truckload of marijuana, to G&G.

19.  It was further part of the conspiracy that on or about January 13, 2000, defendants LUGARDO A. GUTIERREZ, JUAN PELAYO, DANIEL PELAYO-LANDAZURI, RODRIGO TORES JR., JUAN EXIQUIO GARZA JR., AARON ISRAEL QUINTERO, and JOSE LOPEZ, a/k/a HORACIO BADILLO, arrived at G & G and entered the building in order to unload the marijuana from POTEET's truck.

20.  It was further part of the conspiracy that on or about January 13, 2000, defendants LUGARDO A. GUTIERREZ, JUAN PELAYO, DANIEL PELAYO-LANDAZURI, RODRIGO TORES JR., JUAN EXIQUIO GARZA JR., AARON ISRAEL QUINTERO, and JOSE LOPEZ, a/k/a HORACIO BADILLO,

5

placed plywood boards over the cabbages in the truck and began unloading the bales of marijuana in preparation for putting them into another vehicle.

21. It was further part of the conspiracy that the defendants concealed and hid, and caused to be concealed and hidden the acts and the purposes of acts done in furtherance of the conspiracy, and would and did use coded language, surveillance and countersurveillance techniques and other means to avoid detection and apprehension by law enforcement authorities and otherwise to provide security to the members of the conspiracy;

In violation of Title 21, United States Code, Section 846.

## COUNT TWO

The SPECIAL SEPTEMBER 1999 GRAND JURY further charges:

On or about January 13, 2000, in the Northern District of Illinois, Eastern Division, and elsewhere,

SERGIO PELAYO,
LUGARDO A. GUTIERREZ,
JUAN PELAYO,
DANIEL PELAYO-LANDAZURI,
RODRIGO TORES JR.,
JUAN EXIQUIO GARZA JR.,
AARON ISRAEL QUINTERO,
JOSE LOPEZ, a/k/a HORACIO BADILLO,
CLARENCE H. POTEET, and
RAUL PEREZ,

defendants herein, knowingly and intentionally possessed with intent to distribute approximately 3248 pounds of mixtures containing marijuana, a Schedule I Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

A TRUE BILL:

_____
FOREPERSON


UNITED STATES ATTORNEY


7

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

APR - 5 2001

UNITED STATES OF AMERICA )
)
v.                       )    No. 00 CR 39       JUDGE JAMES B. ZAGEL
)    Judge Zagel      UNITED STATES DISTRICT COURT
)
RAUL PEREZ               )

## V E R D I C T - C O U N T   O N E

We, the jury, find the defendant, RAUL PEREZ, GUILTY of
Conspiracy as charged in Count One of the Indictment.

We, the jury find the amount of marijuana that defendant
conspired to possess with intent to distribute as charged in Count
One of the Indictment that has been proved beyond a reasonable doubt
is [check only one]:



Defendant RAUL PEREZ possessed with intent to distribute:

☒ at least 1000 kilograms of marijuana.

☐ less than 1000 kilograms, but at least 100 kilograms of marijuana.

☐ less than 100 kilograms, but at least 50 kilograms of marijuana.

☐ less than 50 kilograms of marijuana.

_____
FOREPERSON

_____

_____

_____

_____

_____

_____

_____

_____

_____

4/5/2001
Date

9

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

June 8, 2005

Before

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 03-1777

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>          *Plaintiff-Appellee,* | Appeal from the United States<br>District Court for the Northern<br>District of Illinois, Eastern Division |
| *v.* | No. 00 CR 39-11 |
| RAUL PEREZ,<br>          *Defendant-Appellant.* | James B. Zagel,<br>*Judge.* |

## O R D E R

On June 4, 2004, in accordance with the procedure set forth in *Anders v. California*, 386 U.S. 738 (1967), we dismissed Raul Perez's appeal of his convictions for possession with intent to distribute and conspiracy with to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) & 846, and the sentence imposed by the district court, two concurrent terms of 360 months' imprisonment, because neither Perez nor his counsel could identify a nonfrivolous basis for his appeal. *United States v. Perez*, 03-1777, 2004 WL 1245293 (7th Cir. June 4, 2004). Perez subsequently filed a petition for a writ of certiorari with the Supreme Court, arguing that his sentence was imposed in violation of his Sixth Amendment right to jury trial.[1] The Court granted Perez's petition, and on January 24, 2005, vacated

---

[1] Although Perez forfeited his Sixth Amendment claim by not raising it in the district court or in his opening brief to this court, he did present this argument in a petition for rehearing en banc, and we may still review his claim for plain error. *United States v. Macedo*, 406 F.3d 778, 789 (7th Cir. 2005)

*10*

No. 03-1777

our judgement and remanded this case for further proceedings in light of *United States v. Booker*, 125 S. Ct. 748 (2005). Following the remand, we asked the parties, pursuant to Circuit Rule 54, to file statements regarding what action should be taken in response to the Supreme Court's order.

In their Rule 54 filings, both parties request that we order a limited remand to determine whether the district court would have imposed a different sentence had it known that the Sentencing Guidelines were merely advisory. See *United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005). Having reviewed the relevant portions of the record and applied the plain error standard of review, see *Paladino*, 401 F.3d at 481, we agree that this is the proper course of action. The district court imposed Perez's sentence under a mandatory guidelines system, and there is nothing in the record to demonstrate that the judge would have imposed the same sentence had he known that he possessed sentencing discretion and was not bound by the guidelines. Perez's convictions, however, remain intact; the Supreme Court's order concerns only the propriety of his sentence.

Accordingly, while retaining jurisdiction over this appeal, we REMAND this matter to the district court for proceedings consistent with *Paladino*, 401 F.3d at 483-84.

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

July 20, 2004

Before

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 03-1777

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,* | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division. |
|     *v.* | No. 00 CR 39-11 |
| RAUL PEREZ,<br>    *Defendant-Appellant.* | James B. Zagel,<br>*Judge.* |

## O R D E R

On June 23, 2004, the defendant-appellant filed a petition for rehearing. All of the judges on the original panel have voted to deny the petition. The petition is DENIED.

*12*

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

January 24, 2005

Mr. Robert Handelsman
Suite 1717
77 W. Washington St.
Chicago, IL  60602

Re:  Raul Perez
     v. United States
     No. 04-5879

Dear Mr. Handelsman:

The Court today entered the following order in the above-entitled case:

The motion of petitioner for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted.  The judgment is vacated and the case is remanded to the United States Court of Appeals for the Seventh Circuit, for further consideration in light of United States v. Booker, 543 U.S. ___ (2005).

The judgment or mandate of this Court will not issue for at least twenty-five days pursuant to Rule 45.  Should a petition for rehearing be filed timely, the judgment or mandate will be further stayed pending this Court's action on the petition for rehearing.

Sincerely,

*William K Suter*

**William K. Suter**, Clerk

*13*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED

AUG - 5 2005

UNITED STATES OF AMERICA,          )
     Plaintiff,                    )
                               )
                               )  00 CR
     vs.                           )  MICHAEL W. DOBBINS
                               )  CLERK, U.S. DISTRICT COURT
                               )  Judge Zagel
RAUL PEREZ,                        )
     Defendant.                    )

### PEREZ' PALADINO STATEMENT

Perez submits the following as reasons for the court to impose a lesser sentence than that specified by the Sentencing Guidelines.

Now that U.S. vs. Booker, 125 S.Ct. 738 (2005), has declared 18 U.S.C. Sec. 3553(b)(1) as unconstitutional, a sentence is determined by the factors listed in 18 U.S.C. Sec. 3553(a). U.S. vs. Dean, 2005 WL 1592960 at 3 (7th Cir. 2005).

At the sentencing, the court stated "the minimum sentences in this case are very, very substantial. Perhaps more substantial than I would be willing to impose were I entirely free to do so." T.3-14-03 at 18-19; Exhibit A. Perez requests the court to impose a sentence of lesser magnitude consistent with the factors stated in Sec. 3553(a), i.e., the sentence the court obviously had in the back of its mind when it said the words quoted in the previous sentence. The court's statement quoted in the first sentence of this paragraph had to have been made with Sec. 3553(a) in mind as, prior to Booker, the factors stated in Sec. 3553(a) were binding on the determination of a sentence and were limited only by Sec. 3553 (b)(1). As mentioned in the previous paragraph, Sec. 3553(b)(1) is unconstitutional and no longer a factor in sentencing.

1

*14*

Perez submits his own reasons why his sentence should be re-
duced. These reasons are stated in Exhibit B.

Respectfully submitted,

Robert Handelsman
Suite 1717
77 W. Washington St.
Chicago, Ill. 60602
312-977-1600
Atty. for Perez

2

*15*

IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,                    )
     Plaintiff-Appellee,                   )
                            )
           vs.                                )    03-1777
                            )
RAUL PEREZ,                                   )
     Defendant-Appellant.                  )

U.S.C.A. – 7th Circuit
R E C E I V E D

SEP – 5 2006 RJT

GINO J. AGNELLO
CLERK

PEREZ' SUPPLEMENTAL STATEMENT REGARDING FURTHER PROCEEDINGS

In open court on July 24, 2006, Judge Zagel stated on the record that, had he known the Guidelines were advisory when he sentenced Perez, he would have imposed a lesser sentence. On July 25, Perez' counsel filed an initial statement regarding further proceedings based upon Judge Zagel's oral statement at this court appearance.

Later in the day on July 24, Judge Zagel issued a minute order in which he reversed himself and concluded that, if the Guidelines were advisory when he sentenced Perez, he would have imposed a Guideline sentence. A copy of that minute order is attached. Perez' counsel was not aware of judge Zagel's change of position until he received the Government's position regarding a <u>Paladino</u> remand as he did not receive a copy of the attached minute order.

A district court's decision on a <u>Paladino</u> remand is discretionary and a Guideline sentence is presumptively reasonable. <u>U.S. vs. Dean</u>, 414 F.3d 725, 730 (7th Cir. 2005); <u>U.S. vs. Williams</u>, 425 F.3d 478, 481 (7th Cir. 2005). The record affords no basis for counsel to argue that Judge Zagel's ultimate conclusions as recited in the attached minute order are an abuse of discretion or that a Guideline sentence is presumptively unreasonable.

1

*16*

Respectfully submitted,

Robert Handelsman
Suite 1717
77 W. Washington St.
Chicago, Ill. 60602
312-977-1600
Atty. for Appellant

2

17

**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois **60604**

September 19, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

| | |
|---|---|
| No. 03-1777 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | |
| | No. 00 CR 39-11 |
| *v.* | |
| RAUL PEREZ, *Defendant-Appellant.* | James B. Zagel, *Judge.* |

### O R D E R

Raul Perez appealed his sentence of two concurrent terms of 360 months' imprisonment for possession with intent to distribute and conspiracy to possess with intent to distribute marijuana, contending that the district court plainly erred under *United States v. Booker*, 543 U.S. 220 (2005). We ordered a limited remand and directed the district court to determine whether it would have imposed the same sentence under an advisory regime. *See United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005). The district court replied that it would.

In *Paladino*, we held that if a district court responds to a limited remand with a statement that it would reimpose the same sentence, "we will affirm the original sentence against a plain-error challenge provided that the sentence is reasonable." 401 F.3d at 484 (7th Cir. 2005). We have also explained that "any sentence that is



No. 03-1777

properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness."*United States v. Mykytiuk,* 415 F.3d 606, 608 (7th Cir. 2005).

After remand, faced with the trial judge's statement that he would impose the same sentence under advisory guidelines, the appellant merely pointed out that, at the original sentencing, the judge had said that "had he known that the Guidelines were advisory when he sentenced Perez, he would have imposed a lesser sentence." Perez's Statement Regarding Further Proceedings at 1. The government urges this court affirm the sentence because it is reasonable.

A jury convicted Raul Perez of one count of conspiracy to possess with the intent to distribute narcotics in violation of 21 U.S.C.§ 846 and of possession of narcotics with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). Neither party disputes the accuracy of the advisory guideline range which was calculated at 360 months to life. The trial judge imposed a sentence at the very bottom of that range (360 months).The defendant has not established plain error or that the 360-month sentence is unreasonable under 18 U.S.C. § 3553(A). We AFFIRM the judgment of the district court.

*19*

Edgerly -- direct                                    240

1    Q    On January 13, 2000, were you present at the arrest site

2    at the G&G Trucking in the evening, at approximately 8:30

3    p.m.?

4    A    Yes, I was.

5    Q    At that point, were you given a particular assignment

6    concerning the custody of the marijuana in Poteet's truck?

7    A    Yes.

8    Q    Were certain steps taken at G&G to secure the marijuana

9    in Poteet' truck shortly after the arrest?

10   A    Yes.  The arrest situation, the marijuana was still on

11   the truck at that point.  I made sure it stayed secured on

12   the truck by putting a padlock back on that vehicle.  We then

13   moved the semi -- the driver who originally brought it there

14   was Mr. Poteet.  He drove the truck back to the District 5

15   State Police Headquarters.  I followed him in my vehicle.

16   Also in the cab with Mr. Poteet was a couple of other police

17   officers.

18   Q    What happened at District 5 Headquarters?

19   A    Repeat that, please?

20   Q    What happened at District 5 Headquarters?

21   A    At that point, I arranged to have another firm come out

22   to help us assist in the unloading of the marijuana from that

23   trailer.

24   Q    Where did you load the marijuana?

25   A    I loaded it from the semi-trailer into the back of a

Edgerly - direct                          241

1   smaller truck, approximately a 16-foot truck.

2   Q    Was that truck then secured?

3   A    I secured that truck with the use of a padlock.

4   Q    What happened next?

5   A    I drove that truck to the Lockport Police Department.  I

6   secured that into a building.  Then, I was assigned the only

7   key to that building.

8   Q    Did the truck remain there for a period of time?

9   A    It remained there for probably -- I am guessing, four

10  hours, until I picked it up that same morning.

11  Q    That would be the morning of January 14th, 2000?

12  A    Yes.

13  Q    When you returned to the Lockport Police Department, was

14  the truck still locked into the maintenance building, and was

15  the rear of the truck still locked with the marijuana inside?

16  A    Yes, it was.

17  Q    What happened then?

18  A    After I picked the truck up at the Lockport Police

19  Department, I drove it back to the District 5 State Police

20  Headquarters. Then we off loaded it once again for the

21  purposes of counting each package and weighing the packages.

22  Q    How many packages did you come up with?

23  A    115.

24  Q    Did you come up with a weight of 3,221 pounds at that

25  point?

*21*

1    A    Yes.

2    Q    What happened then after you counted the packages and

3    the weighing?

4    A    The packages were then loaded back onto the same vehicle

5    again. The padlock was placed on the back. Then I drove that

6    vehicle to Chicago, to the United States Customs Office.

7    Q    What happened at the Customs Office?

8    A    We off loaded the marijuana once again, took it upstairs

9    to the Customs Office, and turned it over to their vault

10   custodian.

11   Q    Was there a count of the packages performed?

12   A    Yes.

13   Q    What did you discover during that count?

14   A    We actually discovered that inadvertently we had marked

15   two number 8s.  In essence, we had 116 packages, and not 115.

16   Q    Was the weight of the marijuana then verified?

17   A    Yes.  Customs wanted it weighed in kilograms.  It was

18   then weighed again.  It came out to be 1,473 kilograms of

19   marijuana.

20   Q    Can you recall the poundage, after the discovery of the

21   additional bale.  Do you recall how many pounds it weighed

22   out to be?

23   A    I think it was something like 3,248 pounds.

24   Q    Then after the Customs house took possession of the

25   marijuana, did you have further roles in the custody or

*22*

1   Q    Were Raul Perez's fingerprints found on any of the 116

2   packages --

3          MS. MURPHY:  Objection, your Honor, it is beyond

4   the scope of direct.

5          THE COURT:  It is beyond the scope of the direct.

6          MR. ARONSON:  No further questions.

7          MS. MURPHY:  I have no further questions, your

8   Honor.

9          THE COURT:  You may step down.

10         THE WITNESS:  Thank you.

11         THE COURT:  Call your next witness.

12

13         (Witness sworn.)

14         T E R R Y    A.    D E L   C A S O N,

15   having been first duly sworn, called as a witness in behalf

16   of the government, was examined and testified as follows:

17                      DIRECT EXAMINATION

18   BY MS. JOHNSON:

19   Q    Please state your name and spell your last name?

20   A    Yes, ma'am.  My name is Terry, the middle name Allen,

21   A-l-l-e-n.  The last name is capital D-a-l, space, capital

22   C-a-s-o-n.  That is Del Cason.

23   Q    Mr. Del Cason, how are you currently employed?

24   A    I am employed as a forensic chemist.

25   Q    By whom are you employed?

**23**

Del Cason - direct                        245

1   A    The United States Department of Justice, the Drug

2   Enforcement Administration.

3   Q    How long have you been so employed?

4   A    Approximately 30 years.

5   Q    What is your educational background?

6   A    I have an undergraduate degree from Rockford College, in

7   Rockford, Illinois.  I completed about 36 credits in

8   chemistry, 18 in mathematics, and 9 in physics.  I have also

9   got a Graduate Degree from Roosevelt University, in

10  Chemistry.

11          MR. ARONSON:  Your Honor, we stipulate to the

12  qualifications of this witness as a chemist.

13          THE WITNESS:  I'm sorry, your Honor, I seem to be

14  having a little bit of trouble breathing.

15          THE COURT:  Do you want to take a break?

16          THE WITNESS:  Yes, please.

17          THE COURT:  Do you accept the stipulation as to his

18  qualifications?

19          MS. JOHNSON:  Yes, your Honor.

20          THE COURT:  We will take a minute.

21

22          (Brief recess.)

23

24              DIRECT EXAMINATION (resumed)

25  BY MS. JOHNSON:

*24*

1   Q    Are you okay?

2   A    I think so.  It might have been something I had to eat

3   this morning.

4   Q    If you need to stop, please let us know.

5   A    Yes, ma'am.

6          MR. ARONSON:  Your Honor, I understand that there

7   is a problem with the witness.  We will stipulate that what

8   was tested at the laboratory was marijuana.

9          MS. JOHNSON:  That is fine, your Honor.

10         THE COURT:  Is that fine?

11         MS. JOHNSON:  Yes, your Honor.

12         THE COURT:  That is the sole purpose of this

13   witness?

14         MS. JOHNSON:  That is the sole purpose of this

15   witness.

16         THE COURT:  So stipulated.

17         THE WITNESS:  I apologize, your Honor, this hasn't

18   happened before, but for some reason, I wasn't able to catch

19   my breath.  All I can attribute it to was a bad piece of

20   pastry I had this morning.

21         MS. JOHNSON:  Your Honor, before the witness does

22   step down, we would like to offer the exhibits of what he did

23   test.

24         THE COURT:  Sure.

25   BY MS. JOHNSON:

**25**

Del Cason - direct                               247

1   Q    Mr. Del Cason, can you just tell the ladies and

2   gentlemen of the jury what you have just taken out of the

3   bag?

4   A    Yes, ma'am. These are two exhibits that were submitted

5   to our laboratory for analysis.

6            This is Exhibit 1A.  It is referred to as a

7   brick, because of its shape.  It is compressed plant

8   material, and it is material that I analyzed.

9            This is Exhibit 1B through -K, which are the

10  exemplars, or portions of larger samples of the same

11  material, but from other bricks that were submitted to our

12  laboratory for analysis, and which in fact I did analyze.

13           MS. JOHNSON:  Your Honor, we would like to offer

14  Government's Exhibits Drug Marijuana Samples into evidence.

15           MR. ARONSON:  No objection.

16           THE COURT:  Admitted.

17           MS. JOHNSON:  Thank you.  I am done with this

18  witness.

19           THE COURT:  Any questions?

20           MR. ARONSON:  No questions.

21           THE COURT:  You may step down.

22           THE WITNESS:  Thank you, your Honor.

23           MS. JOHNSON:  May I retrieve?

24           THE COURT:  I think we will take a break now for

25  the morning call.

**26**

Garza - direct

1  Q.  And is it correct that you and the other individuals

2  present at the site laid plywood boards over the top of the

3  cabbage?

4  A.  Yes.

5  Q.  And began passing the bails of marijuana over the top of

6  the boxes of cabbage and out to the rear of the truck?

7  A.  Yes.

8  Q.  Isn't it correct that you expected that Raul Perez would

9  pay you something for the unloading?

10  A.  Or the truck driver.

11  Q.  Because Raul Perez had paid you in the past for either

12  loading our unloading marijuana?

13  A.  Yeah.

14  Q.  Now, is it correct that you were arrested with the other

15  people on January 13th of 2000?

16  A.  Yes.

17  Q.  And about three weeks later you decided to consider

18  cooperating with the United States?

19  A.  Yes.

20  Q.  And isn't it correct that on February 7th of 2000, you

21  arrived at the U.S. Attorney's office for a meeting?

22  A.  Yes.

23  Q.  And isn't it correct that shortly thereafter, you

24  testified in the grand jury?

25  A.  Yeah.

372

1          MS. MURPHY:  And we will retain that.

2          THE COURT:  All right.  Those will be given over

3     objection.  Government Instruction 23 given over objection.

4          MR. ARONSON:  Wait a minute.  Instead of withdrawing,

5     21 is given, right?

6          THE COURT:  Right.

7          MS. MURPHY:  21 is given.  22 will be given modified

8     to read "Schedule I."  We are now on 23?

9          THE COURT:  24.  I am giving 23 over objection.

10         MS. MURPHY:  Objection, okay.

11         THE COURT:  23 is your "elements" instruction.

12         MR. ARONSON:  Okay.

13         I object to this language.  Number one, I don't think

14    it's necessary; and, number two, it really invites the jury

15    to --

16         THE COURT:  I have one issue --

17         MR. ARONSON:  -- to go haywire.

18         THE COURT:  -- and, that is:  Do we run into Apprendi

19    in this?

20         MS. JOHNSON:  It's taken care of in later

21    instructions.

22         MS. MURPHY:  We have an Apprendi instruction further

23    on in there.

24         THE COURT:  Okay.  Well, let us put this to one side

25    for a second.

**28**

1        25 is a standard instruction.

2        26 is your Apprendi instruction.

3        MS. MURPHY:  Yes, your Honor.  And, then, we have

4    special verdict forms at the end.

5        MR. ARONSON:  They set it out in the verdict forms

6    each category amount.

7        THE COURT:  Right.  Then I am going to give 24, 25,

8    26 and 27.  What the government is proposing -- and probably

9    correctly so as I read Apprendi -- is that Apprendi did not

10   change -- the way to tell the jury about Apprendi is to tell

11   them, basically, it does not matter what the amount is for

12   purposes of a liability determination.

13       MS. MURPHY:  Yes.

14       THE COURT:  But we must establish beyond a reasonable

15   doubt the amount in order to assess a penalty.

16       MS. MURPHY:  Yes.

17       THE COURT:  Which is what they are doing.  Okay.

18       So, I will give 25, 26 and 27.

19       Now, the next one to which I believe Mr. Aronson

20   might have an objection --

21       MR. ARONSON:  I do object.  It's not --

22       THE COURT:  -- is 28.

23       MR. ARONSON:  It's not -- 28 is not necessary.  And,

24   again, it invites the jury to just rove into -- delve into

25   matters which aren't their concern.

*29*

1            THE COURT:  The answer to this one is I reserve

2    opinion on this, depending on what I hear in closing argument.

3            MR. ARONSON:  Okay.

4            THE COURT:  So, 28 -- okay.

5            29 is a standard instruction.  I am assuming that is

6    true of everything else.  So, before we get to the verdict

7    forms --

8            MR. ARONSON:  One more instruction.

9            THE COURT:  -- we will deal with --

10           MS. MURPHY:  We, actually, have three more

11   instructions, your Honor.

12           THE COURT:  The following additional instructions --

13   and, obviously, we are going to have to reconsider -- we are

14   going to have to go back on a couple of others, but 32 is the

15   polygraph instruction.  You have an objection to this.  The

16   one I already gave, which I think I have to reiterate.

17           MR. ARONSON:  I think you gave it to them.

18           THE COURT:  Yes, but then I will reiterate.

19           33 is the possession instruction.

20           MR. ARONSON:  I think that's so confusing and so

21   invites speculation, and it's not necessary.

22           MS. MURPHY:  I think it is necessary, your Honor.

23           THE COURT:  Wait a minute.

24           MS. MURPHY:  We have a constructive possession

25   situation.



1          THE COURT:  Given the nature of the questioning in

2    this case, the answer is yes, it is necessary.  So, given over

3    objection.

4          Government Instruction 34 has to be given.  I always

5    wonder about giving this one.  We had at least one juror who I

6    think is fluent in Spanish, but there is nothing that can be

7    done.

8          Now, before we approach the defendant's instruction,

9    let us look at the verdict forms.

10         So, the way you have dealt with Apprendi is --

11         MS. MURPHY:  We've set out the categories set forth

12   in 841(b)(1)(A), (B), (C) and (D), your Honor.

13         THE COURT:  Right.

14         Do you have a problem with any of these?

15         MR. ARONSON:  No.

16         THE COURT:  I did not think so.  They are not bad for

17   you.

18         MR. ARONSON:  No.  Let them check a box.

19         THE COURT:  I am giving the verdict instructions.

20         Now let us go back to Instruction 23, Instruction

21   20 -- not 20 -- 20.  20, 23 and Defendant's Instruction 1.

22         Now, can I have my book back for a minute?

23         MS. MURPHY:  I'm sorry, your Honor.

24         (Document tendered.)

25         (Brief pause.)

*31*

IN THE SUPREME COURT OF THE UNITED STATES
OCTOBER TERM 2004

RAUL PEREZ,                          )
    Petitioner,                      )
                     )
        vs.                          )
                     )
UNITED STATES OF AMERICA,            )
    Respondent.                      )

PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

Robert Handelsman
Suite 1717
77 W. Washington St.
Chicago, Ill. 60602
312-977-1600
Atty. for Petitioner

*32*

## QUESTIONS PRESENTED FOR REVIEW

### I

Whether a <u>Blakely</u> issue can be raised for the first time on a petition for certiorari.

### II

Whether relevant conduct, role in the offense and obstruction was proven beyond a reasonable doubt as required by <u>Blakely</u>.

1

**33**

# TABLE OF CONTENTS

Questions Presented For Review.................................P.1

Table of Authorities......................................P.3

References to Opinions....................................P.3

Jurisdictional Statement..................................P.3

Statement of Facts........................................P.4

Argument..................................................P.4

    I.   Whether a <u>Blakely</u> issue can be raised
        for the first time on a petition for
        certiorari.............................................P.4

   II. Whether relevant conduct, role in the
        offense and obstruction was proven be-
        yond a reasonable doubt as required by
        <u>Blakely</u>..............................................P.5

Conclusion................................................P.7

34

## TABLE OF AUTHORITIES

Adickes vs. Kress and Co., 398 U.S. 144 (1970)............PP.4-5

Anders vs. California, 386 U.S. 738 (1967)..................P.4

Apprendi vs. New Jersey, 530 U.S. 466 (2000)..............PP.5,6

Blakely vs. Washington, ___ U.S. ___ (2004)...............PP.4-7

Clinton vs. U.S., 531 U.S. 920 (2000).......................P.5

Jackson vs. U.S., 531 U.S. 1033 (2000)......................P.5

Patterson vs. U.S., 531 U.S. 1033 (2000)....................P.5

Whitt vs. U.S., 531 U.S. 975 (2000).........................P.5

U.S. vs. Gaudin, 516 U.S. 506 (1995)........................P.7

U.S. vs. Jackson, 213 F.3d 1269 (10th Cir. 2000)............P.5

U.S. vs. Jackson, 236 F.3d 886 (7th Cir. 2001)..............P.7

U.S. vs. Nance, 236 F.3d 820 (7th Cir. 2001)................P.7

U.S. vs. Patterson, 215 F.3d 776 (7th Cir. 2000)............P.5

U.S. vs. Reliford, 210 F.3d 285 (5th Cir. 2000).............P.5

U.S. vs. Robinson, 250 F.3d 527 (7th Cir. 2001).............P.7

U.S. vs. Whitt, 211 F.3d 1022 (7th Cir. 2000)...............P.5

Whitt vs. U.S., 531 U.S. 975 (2000).........................P.5

## REFERENCE TO OPINIONS

The opinion of the Court of Appeals is not reported and is appended to this petition as Appendix 1-4.

## JURISDICTIONAL STATEMENT

1. The Court of Appeals' opinion was filed on June 4, 2004.

2. No petition for rehearing was filed.

3. The jurisdiction of this Court is premised upon 28 U.S.C. Sec. 1254(1).

35

## STATEMENT OF FACTS

Petitioner was charged in the Northern District of Illinois with one count of conspiracy to possess 3,248 pounds of marijuana with intent to distribute and one substantive count of distribution of that marijuana. He was convicted by a jury of both counts.

Petitioner's sentence was premised upon a conspiracy involving 13,000 pounds of marijuana in addition to the 3,248 pounds alleged in the indictment. His sentence was enhanced by four offense levels pursuant to Guideline 3B1.1(a) for organizing and leading the conspiracy and two levels pursuant to Guideline 3C1.1 for perjuring himself while testifying in his defense. The jury heard evidence of the additional 13,000 pounds of marijuana and that Petitioner organized and led the marijuana scheme. The jury was not asked to return special verdicts on Petitioner's involvement with the additional 13,000 pounds of marijuana, whether Petitioner organized and/or led the conspiracy and whether he perjured while testifying.

### ARGUMENT

#### I

#### A BLAKELY ISSUE MAY BE RAISED FOR THE FIRST TIME ON A PETITION FOR CERTIORARI

An argument along the lines made by the successful petitioner in Blakely vs. Washington, ___ U.S. ___ (2004), was not made in the District Court or the Court of Appeals. Counsel who is filing this certiorari petition filed an Anders brief, see Anders vs. California, 386 U.S. 738 (1967), in the Court of Appeals.

Ordinarily, an issue not raised in the Court of Appeals cannot be raised in a petition for certiorari. Adickes vs. Kress and Co.,

4

36

398 U.S. 144, 147 at n.2 (1970). However, in a number of cases af-
ter Apprendi vs. New Jersey, 530 U.S. 466 (2000), this court grant-
ed certiorari petitions, vacated judgments of the courts of appeals
and remanded for consideration of Apprendi even though the issue
successfully argued by the petitioner in Apprendi was not raised in
the court of appeals. See Clinton vs. U.S., 531 U.S. 920 (2000),
and U.S. vs. Reliford, 210 F.3d 285, 307-308 (5th Cir. 2000); Whitt
vs. U.S., 531 U.S. 975 (2000), and U.S. vs. Whitt, 211 F.3d 1022,
1028 (7th Cir. 2000); Jackson vs. U.S., 531 U.S. 1033 (2000), and
U.S. vs. Jackson, 213 F.3d 1269, 1284-1285 (10th Cir. 2000); Pat-
terson vs. U.S., 531 U.S. 1033 (2000), and U.S. vs. Patterson, 215
F.3d 776 (7th Cir. 2000). Since Blakely presents an issue which is
very closely related to Apprendi, Petitioner asks this Court to
follow the rationale of the four cases cited supra and to consider
the merits of this petition.

II

**THE RELEVANT CONDUCT, ROLE IN THE OFFENSE AND OBSTRUCTION WAS NOT
PROVEN BEYOND A REASONABLE DOUBT AS REQUIRED BY BLAKELY**

Assuming there was sufficient evidence at trial to support
each of the three enhancements to Petitioner's sentence over and
above the quantity of marijuana charged in the indictment, i.e., a
scheme involving an additional 13,000 pounds of marijuana, that Pe-
titioner organized and led the scheme and that he perjured himself
while testifying, Blakely is not satisfied because the jury was not
asked to return special verdicts on each of these three enhance-
ments.

It is not enough under Blakely that there may be evidence be-

5

fore the jury which supports the sentence. <u>Blakely</u> explicitly requires every fact on which the sentence is based which is not charged in the indictment to be specially found by the jury. <u>Blakely</u> notes that the facts in that case which supported the sentencing enhancement for deliberate cruelty "were neither admitted by petitioner nor <u>found</u> by a jury" (emphasis added), "for <u>Apprendi</u> purposes ... the maximum sentence a judge may impose (is dependent) <u>solely on the basis of the facts reflected in a jury verdict or admitted by the defendant</u>" (emphasis in original) and "(w)hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not <u>found</u> all the facts 'which the law makes essential to the punishment'" (emphasis added). ___ U.S. at ___.

These quotes require a sentence which is not based on an element of the charged offense to be found by the jury in a special verdict. In other words, when facts are "found" by a jury, they are either elements of the charged offense which are necessarily "found" in a general verdict or are stated in a special vedict. If such facts cannot be "found" in a general verdict as elements of the charged offense or stated in a special verdict, <u>Blakely</u> is not satisfied.

The arguments above were not raised in either the District Court or the Court of Appeals. In those appeals which were pending in the Seventh Circuit when <u>Apprendi</u> was decided, the four criteria for invoking plain error were recited and the failure to submit the issue of drug quantity to the jury satisfied the first three of the four. However, the evidence of drug quantity in those cases was

6

38

overwhelming and, thus, the failure to submit the issue of quantity to the jury was deemed to be harmless. Therefore, the fourth criteria for plain error could not be established. See <u>U.S. vs. Nance</u>, 236 F.3d 820 (7th Cir. 2001); <u>U.S. vs. Jackson</u>, 236 F.3d 886 (7th Cir. 2001); <u>U.S. vs. Robinson</u>, 250 F.3d 527 (7th Cir. 2001).

<u>U.S. vs. Gaudin</u>, 516 U.S. 506 (1995), and <u>Blakely</u>, insofar as applicable here, require the jury to find, beyond a reasonable doubt, every element of the charged offense and every fact on which a sentence is based. Therefore, the failure of the jury to specially find the facts on which a sentence is based and which is not a part of the charged offense cannot be passed off as harmless regardless of the strength of the evidence.

## CONCLUSION

For the foregoing reasons, Petitioner requests this Court to grant this petition for certiorari, vacate the judgment of the Court of Appeals and remand this matter to the Court of Appeals for further proceedings consistent with <u>Blakely</u>.

Respectfully submitted,

Robert Handelsman
Suite 1717
77 W. Washington St.
Chicago, Ill. 60602
312-977-1600
Atty. for Petitioner

7

39

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No.  00 CR 39 |
| | ) | |
| RAUL PEREZ | ) | Chicago, Illinois |
| | ) | Friday, March 14, 2003 |
| | ) | 10:00 o'clock a.m. |
| | ) | Room 2503 |

REPORT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES B. ZAGEL

APPEARANCES:

For the Plaintiff:                    PATRICK J. FITZGERALD
                                      UNITED STATES ATTORNEY'S OFFICE
                                      219 South Dearborn St., Suite 500
                                      Chicago, IL  60604
                                           BY:  MS. MADELEINE S. MURPHY

For the Defendant
RAUL PEREZ:                           MS. ANDREA E. GAMBINO
                                      200 South Michigan Ave., Suite 1240
                                      Chicago, IL  60603

ALSO PRESENT:                         MS. KELLY RICE,
                                      Senior Probation Officer
                                      UNITED STATES PROBATION
                                      50 East Monroe St., Suite 1500
                                      Chicago, IL  60603

Court Reporter:                       MR. ANTHONY W. LISANTI
                                      United States Courthouse
                                      219 South Dearborn Street
                                      Chicago, Illinois 60604
                                      (312) 939-2092

40

```
 1              THE CLERK:  2000 CR 39, United States versus Raul
 2    Perez for sentencing.
 3              MS. MURPHY:  Good morning, your Honor, Madeleine
 4    Murphy on behalf of the United States.
 5              MS. GAMBINO:  Andrea Gambino on behalf of Mr.
 6    Perez, who is present in court this morning.
 7              MS. RICE:  Good morning, your Honor, Kelly Rice on
 8    behalf of Kelly Hendrickson for Probation.
 9              THE COURT:  I have in front of me a Pre-Sentence
10    Investigation Report, which I assume, Ms. Gambino, that you
11    and your client have both read and gone through.
12              MS. GAMBINO:  Yes.
13              THE COURT:  One of the reasons I assumed this is, I
14    also have your written objections to the Pre-Sentence Report.
15              MS. GAMBINO:  Yes.
16              THE COURT:  Anything else I should have?
17              MS. MURPHY:  No, Judge.  I can respond to the
18    objections orally.
19              THE COURT:  Pardon me?
20              MS. MURPHY:  I will respond to the objections
21    orally.
22              THE COURT:  Swell; why don't you do that.
23              MS. MURPHY:  Taking them in turn.  The first
24    objection is -- based on the testimony at trial, no specific
25    drug amount was established beyond a reasonable doubt.
```

41

1        ~~As the Court knows, for sentencing purposes,~~
2    ~~the preponderance of the evidence standard controls.~~
3                If you remember from trial, Judge, we had an
4    Apprendi verdict form in this case wherein the jury found
5    beyond a reasonable doubt that the defendants had distributed
6    in excess of 1,000 kilos of marijuana.  That gets him to a
7    Level 32.  That also gives us, under Apprendi, the
8    opportunity to seek a sentence up to 40 years.
9                Addressing the various points concerning the
10   amount of marijuana, number one, the issue of a proper chain
11   of custody was not established.  This essentially is a
12   credibility issue concerning the various witnesses who
13   testified at trial, plus as you know, a chain of custody is
14   an issue of the weight of evidence and not admissibility.
15               If you recall, Judge, we had what is
16   essentially eye-witness testimony from a number of eye-
17   witnesses in this trial, a variety of officers who either
18   conducted the arrest or took possession of the marijuana and
19   stored it, Customs, and later at the DEA.  We had the eye-
20   witness testimony of Mr. Poteet, to the effect that he picked
21   up a load of in excess of 3,000 pounds of marijuana in Texas
22   and brought it here to Illinois.  We had the eye-witness
23   testimony of Juan Garza, who testified that he had loaded the
24   marijuana and brought it up to Illinois.  We also had the
25   eye-witness testimony of the defendant here.  The defendant

42

1   took the stand and admitted under his coercion defense that

2   he had engaged in the offense at issue.  He never once

3   contested the amount of marijuana that was tested by the two

4   government witnesses.

5            Of course, as the defendant he is not required

6   to testify, but if he does choose to testify, his testimony

7   is entitled to the same weight and is given just the same

8   considerations as any other witness that testifies at trial.

9   The fact that he admitted to bringing the marijuana here,

10  actually to loading the marijuana in Texas and bringing it

11  here to Chicago, but chose not to address or contest the

12  amount of marijuana that was found in the trailer here is

13  very telling.

14           Plus, Judge, this is also an issue of

15  credibility.  The various officers who testified at trial

16  were virtually unimpeached in their testimony as to the

17  amounts of marijuana. We had Officer Edgerly who testified to

18  taking the marijuana from the site of the arrest and

19  eventually to Customs.  We have the testimony of Mr.

20  DalCason, the Forensic Chemist, to the effect that he had

21  performed forensic tests on the marijuana. We also had

22  photographs of the marijuana which were introduced at trial.

23           There was absolutely no testimony at trial to

24  the effect that the government had secretly switched someone

25  else's marijuana, and that ended up being tested by Mr.

43

1    DalCason.

2              So under the circumstances, Judge, the

3    government feels that we have more than adequately met the

4    preponderance standard on the issue of the chain of custody.

5              In terms of the preponderance standard on the

6    amount of relevant conduct, you might recall in the

7    sentencing of Horacio Badillo, Judge, you found that Mr.

8    Poteet's testimony did not meet the preponderance standard

9    for 13,000 pounds of marijuana, but it more than met, along

10   with considering the testimony of other witnesses, the

11   preponderance standard for enough marijuana to put the

12   defendant into a category of Level 34, which as you might

13   recall, is 6,600 pounds.

14             If you recall from Mr. Perez's trial, and also

15   from Mr. Badillo's trial, one of the co-defendants, Juan

16   Garza, took the stand, at least in Mr. Perez's trial, and

17   admitted that he had engaged in between five and seven other

18   loads of marijuana.  In fact, he had admitted that he had

19   engaged in between five and seven other loads of marijuana

20   before the offense at issue in this case even took place.  He

21   had been interviewed by the FBI some weeks before he was

22   arrested in this case and admitted then that he had engaged

23   in between five and seven loads of marijuana.

24             If you remember Mr. Badillo's testimony, as a

25   witness in Mr. Perez's trial, and then as the defendant's



1    witness in his own trial, he admits that he had told the
2    government at one point that he had engaged in at least six
3    trips, besides the trip at issue here.  If you also recall,
4    when Mr. Poteet testified in the hours immediately after his
5    arrest, he sat down and he made up a chart of each of the
6    trips and listing each of the amounts in the trips.  Though
7    he had a number of different amounts to various trips, none
8    of those trips listed was lower than 1,000 pounds in weight
9    of marijuana.
10                    So giving the benefit of the doubt to the
11   defendant and taking the least possible weight; considering
12   the evidence in the record as a 1,000 pounds per load, and
13   considering the testimony of Poteet, Badillo, and Garza,
14   there is more than a preponderance, as you found in the
15   Badillo case, that there was at least an additional 6,000
16   pounds of marijuana as relevant conduct beyond the 3200 some
17   odd pounds that were at issue in the offense of conviction.
18                    Doing some math there, Judge, that brings us
19   to in excess of 9,000 pounds, which is well above the 6,600
20   pound cut-off to put the defendant into Level 36.
21                    If you recall from various trials, Judge, Mr.
22   Poteet testified that the prior loads were at least a
23   thousand pounds, was never impeached. There was never any
24   information brought up at trial to the effect that it was
25   less than that. There was some testimony to the effect that

45

1  Mr. Badillo, in one of his several stories that he had told

2  to the United States, claimed that he had engaged in one load

3  of about 100 pounds and a second load of about 150 pounds.

4  But given that he gave three separate stories to the United

5  States, all of which were mutually inconsistent, that his

6  testimony is entitled clearly to no weight.

7            On the other hand, Mr. Poteet testified

8  credibly and consistently in both trials, and both of those

9  testimonies were consistent with the notes that he made in

10  the couple of hours immediately after his arrest when clearly

11  he was under significant pressure and was obviously thinking

12  very clearly about telling the truth to try to get himself

13  out of a jam that he was into.

14            Now I think that covers the issue about the

15  amounts of marijuana, for the purposes of the offense of

16  conviction and the amount of marijuana for the purposes of

17  relevant conduct.  Moving on to the issue of the two-point

18  enhancement for obstruction, Judge.  The Court had the

19  opportunity to see Mr. Perez not only testifying in his own

20  trial, but testifying in the trial of Horacio Badillo.  In

21  each of these trials, the defendant put forth the defense of

22  coercion, meaning that the burden shifted to the United

23  States to prove an absence of coercion at trial.  Given the

24  verdict in both of these cases, we know that the government

25  proved beyond a reasonable doubt an absence of coercion.



1    Therefore, we know that the testimony of both Mr. Badillo and
2    Mr. Perez, at their respective trials, was incredible to the
3    jury.   Since the government proved beyond a reasonable doubt
4    there was no coercion, clearly their claims that there was
5    coercion is entitled to no weight.
6                      We have a credibility finding here, in
7    essence, by the jury, and you had the opportunity to see both
8    Mr. Perez and Mr. Badillo testify as defendants in their own
9    cases and witnesses in each other case, and you had the
10   opportunity to assess their credibility. Consistent with what
11   the jury found here, it is the government's position that
12   they lied under oath, they did commit obstruction here in
13   bringing forward this story.
14                     Then moving on to the issue of leader-
15   organizer-manager.  Judge, the government feels that the
16   defendant ought to receive a four-point enhancement because
17   it is clear from the evidence that he was in fact the leader
18   of an organization of more than five people.  Judge, the
19   evidence showed that Mr. Perez directed Mr. Poteet.  He
20   directed Sergio Pelayo.  He personally recruited Horacio
21   Badillo, Juan Garza, and Rodrigo Tores, whose name I don't
22   believe is mentioned in the paragraph concerning the
23   enhancement, Judge.  The government would like to ask that
24   his name be added to line 216 of page 7 of the PSI.
25                     So clearly we have an organization obviously

**47**

```
 1    where so many people were arrested.  We have an organization
 2    in excess of five people. We do have the defendant personally
 3    recruiting and directing a number of the individuals involved
 4    here.  The tapes were fairly unequivocal.  It was fairly
 5    clear he had asked Mr. Poteet to drive the load up here from
 6    Texas.  He was making the arrangements that Mr. Poteet be
 7    paid; that he had arranged for Sergio Pelayo to act as the
 8    go-between, between Poteet and the Pelayo brothers in the
 9    unloading.  We have direct testimony from Mr. Garza and Mr.
10    Badillo to the effect that they were recruited by Raul Perez.
11            In addition, you may recall the other Texas
12    defendant in the case, Rodrigo Tores, who entered a guilty
13    plea, was also recruited by Mr. Perez.  It is clear from the
14    evidence that he was not just a go-between here, Judge, he
15    was a primary player in this case and had a major
16    organizational role.  Therefore the government feels that the
17    four-point enhancement is warranted here.
18            So, Judge, given the evidence produced not
19    only at Mr. Perez's trial, but at Mr. Badillo's trial, the
20    government agrees with the calculations in the PSR and asks
21    that he be sentenced at a Level 40, Category 3.
22            THE COURT:  You may respond.
23            MS. GAMBINO:  First of all, with respect to the
24    amounts of marijuana, we have two issues.  One, the marijuana
25    trial, and two the alleged relevant conduct.
```



1           First of all, with respect to the proper chain
2     of custody for the marijuana that was seized, the government
3     clearly did not establish a proper chain of custody;
4     understanding that that should have been objected to at trial
5     but wasn't, we are raising it now in any event, because you
6     have a load of marijuana.

7           It was testified by Edgerly, the police
8     officer in Joliet, that he padlocked this trailer and
9     followed Mr. Poteet as he drove it to the District
10    Headquarters in Joliet.  It went back and forth between
11    Joliet and Lockport a couple of times.  It was left in the
12    Maintenance Building to which he supposedly had the only key.
13    But then for some reason, also unidentified, he takes it into
14    the custody of the Customs Office.  By his own admission,
15    they had made mistakes in counting and measuring it.  There
16    was no testimony about the reliability of the scale that was
17    used, either in the Joliet Police Department or in the
18    Customs Department to weigh out this marijuana.  The chemical
19    analysis that was done referred to the marijuana in brick-
20    size quantities, when it was testified at trial that they
21    were in bales, and presumably the photos show that they were
22    bales of marijuana not bricks.

23          If the officers' testimony is given credit,
24    they were 28 pounds a piece, a slight larger than any other
25    brick shape that you would encounter in other circumstances.



1    There was no testimony about what happened to that marijuana
2    by any Customs official, as to how it was kept in custody
3    with Customs and how it got to the DEA, what happened to it
4    in between, or that there was nothing done to establish that
5    the marijuana that was sent from Customs to the DEA was
6    actually the marijuana involved in this case.  None of that
7    was testified to.
8              Although the case law suggests that chain of
9    custody goes to admissibility, goes to weight, not
10    admissibility, that is when there are problems.  When you
11    have a complete breakdown, or no link between what happened
12    to the marijuana at what point and what happened to it at
13    another point, then that brings into question the reliability
14    of the evidence about it.  There was only the memory of
15    Officer Edgerly with respect to the weight, which he himself
16    admitted had been mistaken the first time around. Then the
17    second time around, he doesn't testify about himself weighing
18    it, but some unnamed Customs official who did not testify at
19    all.
20              So I think that that should have been brought
21    up at trial, but it wasn't.  Certainly it damages the
22    credibility of the finding with respect to the amounts of
23    marijuana that Mr. Perez should have been held responsible
24    for.
25              With respect to the relevant conduct that is



1    alleged here, it is based on Mr. Poteet's testimony.

2    Certainly he also testified that he went with two other men,

3    and he testified about some other incidents and

4    approximations of amounts that were included in those

5    incidents.  But he did not testify with any specificity as to

6    when, or how, or anything else, with respect to these other

7    loads.  His testimony was uncorroborated by anyone.

8             Mr. Garza, who testified to the four to five,

9    or five to seven loads that he had done, in addition to the

10   one at trial, also was not specific.  And at his testimony at

11   trial, he kept repeating -- they even added more, and they

12   even added more, referring to the government.  So it is not

13   clear that he was accepting that the representation was

14   correct, that he was involved in these other incidents.

15            So without any corroborating evidence, we are

16   left with the testimony of an individual who certainly was

17   self-interested in respect to what he was testifying about,

18   with respect to the extra loads, and he himself was not held

19   responsible for anywhere near that amount of marijuana that

20   is reflected in his sentence of 57 months.  If he had been,

21   even with his departure, his sentence would have been a good

22   deal more severe.

23            Basically, we are relying on unsupported

24   memory of someone who has a definite interest in trying to

25   shift weight from himself to someone else and benefit from

*51*

1    that, which he did handsomely.  So it is our position that

2    the 13,000 pounds of additional marijuana should be

3    discounted.

4            Also, Mr. Poteet's testimony was inherently

5    inconsistent because he testified that he had driven four to

6    five times with James Deeds; four to five times with Mark

7    Reed.  He testified about particular dollar amounts that he

8    was responsible for, but again, these dollar amounts don't

9    match up with the pound amounts that he was claiming to have

10   transported.

11           Certainly, if you look at the assets that Mr.

12   Poteet had as compared to anybody else in this case, he was

13   the larger player. By his own admission, he had five to seven

14   semi-trailers which he had purchased with the results of drug

15   money.  He had other partners.  He owned a home.  He owned a

16   business.  If you look at somebody like Mr. Perez, who has no

17   assets and owns nothing, and was just out of jail, it is

18   hardly credible that Mr. Perez was the one responsible rather

19   than Mr. Poteet.

20           With respect to Mr. Badillo, he also did not

21   corroborate the testimony of Mr. Poteet with respect to the

22   amounts of additional marijuana that had been involved in

23   this case.

24           So, we are asking you to discount the 13,000

25   pounds as being excessive, and based on unreliable and

**51**

1    unsupported testimony.

2                With respect to the obstruction of justice,
3    Mr. Perez has a Constitutional right to present his defense,
4    and he did that, and Mr. Badillo also.  But they did not
5    contradict any of the essential facts underlying the
6    transactions at issue at trial.  They were looking at the
7    question of intent. We don't know, based on the jury's
8    verdict, whether they believed that there were some coercion,
9    but it didn't rise to the level of negating the intent, or
10   whether they believed there was any coercion at all and the
11   intent never happened.  All we have to determine that at this
12   point is the testimony of Mr. Perez and Mr. Badillo versus
13   the testimony of Mr. Poteet and Mr. Garza.  All of the
14   individuals in this case had their own interests in
15   testifying the way they did.

16                I would suggest that Mr. Perez and Mr.
17   Badillo, knowing that they could possibly face additional
18   penalties if they were not believed, took a greater risk and
19   wouldn't have done so and wouldn't have done so twice if they
20   hadn't had some fundamental belief in the fact that that
21   incident happened.  All we have to say that it didn't happen
22   is Mr. Poteet and Mr. Garza; with respect to Mr. Poteet,
23   certainly he is not going to claim that he threatened or
24   coerced anyone.  Mr. Garza, it is not clear what his
25   testimony is worth since he was examined as a hostile witness

*53*

1    by the government when they put him on, and he wasn't helpful
2    to the defense either.  He seemed to be trying to back-peddle
3    on his own culpability.

4             So in light of the fact that Mr. Perez did not
5    assert any facts that were inconsistent with the actual
6    transaction, and in fact had to admit his conduct to put
7    forward his defense, we would ask that this not be treated as
8    obstruction of justice, and that he not be penalized for
9    putting on the defense that he did.  The fact that the jury
10   did not believe him is penalty enough, and there is not
11   sufficient evidence to show that either he or Mr. Poteet were
12   lying about the facts of the incident.

13            There also was no evidence that Mr. Perez --
14   any credible evidence that he asked people to do this for
15   him.  Mr. Garza' testimony -- certainly there was a great
16   deal of back and forth, even before the trial, according to
17   the transcript, about whether he was to testify or not.  He
18   presented one story and changed it and changed it back.  It
19   is really not possible to know what the truth of the matter
20   is for him, except that he was doing what he needed to do in
21   order to preserve the deal that he received.

22            Finally, with respect to the insufficient
23   evidence, if Mr. Perez is a leader or organizer.  There is
24   not enough to say that he was in charge of any organization.
25   At worst, he was a middleman between Mr. Poteet and the



1    people in Chicago. There is no evidence that he directed the
2    Pelayos.   In fact, the Pelayos, from their plea agreements,
3    it was Juan Pelayo who was directing things in Chicagoland.
4    Even given the government's position, it appeared that Mr.
5    Perez was more in the position of a supplier rather than an
6    organizer.
7                  With respect to Garza and Badillo, Garza
8    especially had two prior convictions, drug convictions.
9    Certainly his testimony, or assertion that Mr. Perez
10   recruited him is questionable.  And even if he had, the
11   involvement of his relatives does not rise to the level of
12   making him a leader or organizer of any organization of five
13   or more people.  It was not clear that there was a single
14   organization, or that he was involved with organizing what
15   happened in Chicago, beyond putting Mr. Poteet in touch with
16   the Pelayos.
17                  So, at best, a two-level increase would be
18   appropriate.  And it is our position that no additional
19   increase is appropriate in this case, particularly when you
20   look at the enormous disparity between what the sentencing
21   was in the case with respect to Mr. Poteet, whose testimony
22   is being relied on to severely enhance the sentences of his
23   co-defendants; based solely on his assertion that they were
24   involved in an additional 13,000 pounds of marijuana.  He is
25   going to be out of prison probably fairly soon with his 57

**55**

1    months, and Mr. Badillo was sentenced at 235.  Mr. Perez,

2    facing 360 to life, based on the testimony of a single man

3    that was uncorroborated.

4              So, for all of those reasons we would assert

5    that the appropriate base offense level here is 32.  He

6    should not receive enhancement, either for 13,000 pounds of

7    relevant conduct, or for obstruction of justice, and the

8    leadership role, and that he should be sentenced at that

9    level.

10             THE COURT:  Let me go through the objections one at

11   a time.

12             With respect to quantity and relevant conduct,

13   there was enough at trial for a reasonable jury to infer that

14   it was the same marijuana.  It is true that in this case,

15   there is not the testimony that we hear in other cases,

16   although rarely today, that we used the scale, we tested the

17   scale -- we carefully marked this -- we carefully marked

18   that.  The reason there is no testimony of that sort is

19   because there was no objection at trial. There was nothing in

20   the testimony of the defendant, or of that of any other

21   witness, that significantly challenged the chain of evidence

22   or the weight.

23             One of the things that is being done here by

24   raising this objection now, is basically building a kind of

25   trap for the government to say -- we are not objecting, which

56

1    the government usually reads as -- okay, I don't have to

2    prove -- bringing in all of the "impedimenta" which usually

3    comes in when the chain is challenged, or the weight is

4    challenged, and then after the government has relied on this

5    to say -- you know, they didn't prove the chain, and we can

6    raise it in the course of sentence.

7              I thought -- and there is a certain minimum

8    with respect to chain, they have to prove whether or not

9    there is an objection.  That burden was met.  There is

10   clearly enough to infer that it was the same marijuana, and I

11   think the jury did that, and I do it as well.

12             With respect to the amounts, I do not think

13   that there is any way in this case you can get the amounts,

14   or the relevant conduct below 4,000 kilograms.  I think that

15   is about as close as you can come. While that is an amount

16   which is less than the amount which the Probation Officer

17   used in the calculations, it still puts it within the 3,000

18   to 10,000 kilogram range.  So I overrule the objection to

19   quantity.

20             It also ought to be clear from what I have

21   said that I believe Poteet.  The jury believed Poteet, and I

22   disbelieve your client.  There are lots of differences

23   between Poteet and Perez.  Ordinarily, I am deeply troubled

24   by the kind of disparities that you cite.  And in fact, the

25   minimum sentences in this case are very, very substantial,

**57**

1  Perhaps more substantial than I would be willing to impose
2  were I entirely free to do so. But the fact of the matter
3  is, that these kinds of concerns against inordinately high
4  sentences and disparities between those who have been
5  convicted and cooperators, do not really exist for me in the
6  context of this case. They don't exist for me in the context
7  of this case because it is quite clear to anybody who saw the
8  trial, even if it is not absolutely clear to someone who
9  reads only the record, that Perez is a criminal and that he is
10  a tool, the sort of person who was used by criminals; that
11  there is a disparity between the sentence he would get, even
12  under your guideline calculations and the sentence that
13  Poteet would get, strikes me as not unfair in the context of
14  this particular case.

15          Also, dealing with the general equity, if not
16  the guideline calculations, you are dealing here with
17  somebody who basically committed the very same crime, spent
18  time in Federal prison, left the prison, and began
19  immediately to perpetrate the same crime over and over again.
20  I don't think the equitable argument works here.

21          Now returning to the legal ones, the
22  obstruction. He lied at Badillo's trial, and he lied at his
23  own trial. That is obstruction. Your argument is that it is
24  not really obstruction because he didn't contradict any of
25  the government's basic case, he just added something. I do



1    not think that the argument that there is no obstruction

2    because you add an exculpatory or an explanatory lie, on top

3    of the government's case, is the law.  It strikes me as

4    absurd that that would be the law.

5              With respect to his role in the offense, this

6    section is often misread.  It says, 3B1.1 -- based on the

7    defendant's role in the offense, increase the offense level

8    as follows:  If the defendant was an organizer or leader of a

9    criminal activity that involved five or more participants, or

10   was otherwise extensive, increase by four levels.  That is

11   often read by counsel as -- if the defendant was the

12   organizer, or the leader.  In fact, I am quite willing to

13   accept, and I have said this in sentencing others, that the

14   leader of this group, if there is one, is not in court,

15   either because they have fled, or they were never charged.

16   But the Guideline does not say "the leader" or "the

17   organizer."  There can be more than one.  I thought the

18   evidence was quite clear that he was an organizer of criminal

19   activity and an organizer of criminal activity that involved

20   five or more participants.  So I also overrule the objection

21   to role in the offense.

22             The truth is, that in the end there was a

23   credibility issue before the jury which believed Poteet;

24   disbelieved your client.  It is a judgment which I concur

25   with and a judgment which in all honesty, having seen both



1    your client and Poteet testify, I thought was inevitable in

2    the circumstances. So I am overruling the objection.

3              Is there anything you want to say with respect

4    to mitigation, other than to urge the low end of the

5    Guideline, which in my opinion is more than adequate.

6              MS. GAMBINO:  Yes -- I would ask you to depart from

7    that Guideline because not only is it more than adequate, it

8    is excessively harsh with respect to not only his co-

9    defendants, but with respect to the offense itself.  And also

10   to take into consideration that Mr. Perez has a family.  He

11   has children that he will not be able to see while he is

12   free, and that that has an impact on what they are likely to

13   do.  Every time a young person like Mr. Perez gets sentenced

14   to one of these excessively harsh sentences, you are also

15   increasing the chances that his children will also follow in

16   his footsteps.  The research on that has -- it comes back

17   every time that the kids whose parents get imprisoned stand a

18   greater chance of also having trouble, not only in school,

19   but becoming delinquent and getting involved in the criminal

20   justice system as well.

21             In this case where the co-defendant, Badillo,

22   received 235 months, and Mr. Poteet, although I understand

23   what your comments were about, your feelings about disparity,

24   certainly the disparity between 57 months and 360 months for

25   an individual who only has one prior offense and has not



1   given any indication that he is a career criminal -- he has
2   had jobs before, he was working in a job when he was
3   arrested.  So it is not his sole livelihood.  He is a person
4   who is fairly young.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5   ▓▓▓▓▓▓▓▓▓ involved and an excessive ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ly
6   ▓▓▓▓▓▓ him to jail for 30 years.

7                    So I would ask that you consider departing
8   from that Guideline and at least giving him the benefits that
9   Mr. Badillo, who was in a similar situation, also received.

10                   MS. MURPHY:  Judge, I am also going to ask you to
11  take into consideration the effect of the defendant's conduct
12  on his family, but in a very different sense from the way the
13  defense has put it forward to you.

14                   It is entirely true that the defendant has a
15  young wife and children, that he is not likely to see for a
16  long time.  But if you look at the unbelievable human tragedy
17  he has brought upon his extended family, it certainly does
18  not warrant a downward departure, and the only reason I
19  wouldn't ask for an upward departure is that the low end of
20  the Guideline is 360 months.

21                   If you recall, Mr. Badillo is a cousin or
22  another relative of the defendant, Perez.  The defendant,
23  Perez, not only recruited him into this narcotics venture,
24  but also recruited him into the "false coercion story" and
25  increased his sentence, in essence, because he got two points



1    for obstruction of justice and because he decided not to
2    enter into a plea of guilty, which could have resulted in a
3    three-point reduction for acceptance.  That brought him,
4    effectively, from a level 31 of 135 month sentence, up to a
5    level 36, to a 235 month sentence.  It dramatically increased
6    the sentence for his relative, Horacio Badillo.  Similarly,
7    Mr. Garza has not yet been sentenced, but he is in at least
8    the same criminal history category as Mr. Badillo, if not
9    higher.  He is, I believe, Mr. Perez's brother-in-law, and he
10   also has young children, and they are not going to see him
11   for a long time because he is probably going to get at least,
12   if not more, than the sentence that Mr. Badillo got.
13            Thirdly, there was Rodrigo Tores, another
14   relative of the defendant, who as you might recall, though
15   his Guideline range was below 120 months, he ended up
16   receiving a 120 month sentence because he entered into a
17   blind plea, and seems to be afraid to enter into any
18   cooperation agreement or any other type of plea agreement
19   with the government.
20            After hearing the coercion story twice and
21   seeing the various players in that, Judge, I think we can
22   assume that there was some inducement or coercion here among
23   the Texas defendants in this case to try to get them to go
24   along with the coercion story. So not only did he harm his
25   extended family once by getting them all involved in this



1   offense, but he dramatically increased their sentences by

2   inducing them or coercing them to go along with his coercion

3   story.

4           So for that reason, Judge, I would ask that

5   you deny any downward departure.  The only reason, as I said

6   earlier, I wouldn't ask for an upward departure is because I

7   think that the 30 years is an adequate sentence for someone

8   in this age group, considering the circumstances.

9           THE COURT:  Mr. Perez, is there anything you would

10  like to say before I impose sentence upon you?

11          DEFENDANT PEREZ:  Yes, your Honor.

12          THE COURT:  You can move to the center, it is

13  easier.

14          DEFENDANT PEREZ:  I would like to object to all of

15  this on my appeal.  I would like to raise -- I would like to

16  raise on appeal the consent that Mr. Poteet made, the

17  consensual monitoring based on ineffective assistance.  I

18  would like to raise the issue that Mr. Garza was already

19  cooperating with the government since August of 1999, which I

20  should have been informed of there in my discovery, which

21  would have been available for impeachment material.

22          I would like you to please recommend a prison

23  in Texas, and I would like to say that the Federal government

24  does not have jurisdiction over me.

25          THE COURT:  Okay, thank you.

*63*

25

1          The fact remains that this defendant,
2    convicted in Federal Court of conspiracy to possess, with the
3    intent to distribute, 227 kilograms of marijuana, served a
4    sentence, walked out of a prison, and walked right back into
5    that life.  One wonders what good it would do to anybody in
6    his family were he to be free to be with them.

7          I don't think there is a ground for departure
8    within the Guidelines in this particular case, but were there
9    such a ground, I would exercise my discretion against
10   departing downward.

11         The sentence of the Court is 360 months in the
12   custody of the Bureau of Prisons on Count One and Count Two,
13   to be served concurrently.  Upon release from imprisonment,
14   he should be placed on supervised release for a term of five
15   years.  He has to report within 72 hours to the Probation
16   Office in the District to which he is released.  While he is
17   on supervised release, he has to comply with the standard
18   conditions.  He may not commit any offense under Federal,
19   State, and Municipal law.  He may not possess a firearm or a
20   destructive device.  A $5,000 fine, presumably payable
21   through the Inmate Financial Responsibility Program, if he
22   has no assets.  There is a special assessment of $200.

23         Mr. Perez, I do want to inform you that I will
24   recommend custody in a prison in Texas, and you do have the
25   right to appeal, not only the conviction, but the sentence



```
1    itself.  If you want to do that, talk to Ms. Gambino, and she
2    will tell you how to go about doing that.
3                    Anything further?
4            MS. MURPHY:  I don't believe so, Judge.
5            THE COURT:  Thank you.
6            MS. MURPHY:  Thank you.
7
8
```

*65*

1

2

3

4

       I certify that the foregoing is a correct transcript of the original shorthand notes of proceedings in the above-entitled matter.


_____          _____
Anthony W. Lisanti                      Date  4-18-03
Official Court Reporter

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

**William K. Suter**
Clerk of the Court
(202) 479-3011

February 26, 2007

Mr. Raul Perez
Prisoner ID 60397-080
P. O. Box 5000
Greenville, IL  62246

      Re:  Raul Perez
           v. United States
           No. 06-9158

Dear Mr. Perez:

      The Court today entered the following order in the above-entitled case:

      The petition for a writ of certiorari is denied.

                 Sincerely,

                 *William K. Suter*

                 **William K. Suter**, Clerk

**67**